**MERANDO, INC.**

v.

**The UNITED STATES.**

No. 780–71.

United States Court of Claims.
March 16, 1973.

Maurice A. Guervitz, Washington, D. C., attorney of record for plaintiff.

Francis H. Clabaugh, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

KUNZIG, Judge.

In this government contract case, the court is being asked by cross motions for summary judgment to review a decision [1] of the Armed Services Board of Contract Appeals (the Board) pursuant to the Wunderlich Act, 41 U.S.C. §§ 321–22 (1970).

The issue for consideration is whether the contractor is entitled to damages for work done outside of an admittedly misdrawn "contract limit line". For the reasons that follow, we hold that the plaintiff-contractor is not entitled to recover as a matter of law.[2]

---

1. Merando, Inc., 69–2 BCA ¶ 7946.
2. Only the question of entitlement is before the court, the parties having stipulated to

leave the question of quantum for further proceedings. It was also agreed that the contractor's claim for damages due to

The contract in issue, No. DA 44–110–ENG–6020, was for the construction of an "E. W. Barracks" Complex at Fort Myer, Virginia. The Invitation for Bids (IFB) was issued on December 3, 1965. Since the drawings accompanying the IFB package displayed areas outside the contract work zone, the drawings contained the usual "contract limit line" within which the contract work was to be performed. Prior to bid opening, on February 16, 1966, the original IFB package was amended seven times.

Amendments Nos. 2 and 4 cover the work which is the subject of this appeal. No. 2 revised certain drawings which depicted the Water and Sanitary Sewer Plan and the Steam Distribution Plan. This was designated on the drawings as Revision "b". Inside of the contract limit line was a boiler building, Building No. 66, which was to be demolished pursuant to the contract. It supplied heat to buildings shown on the drawings, but which were outside of the work zone. The revisions encompassed in Amendment No. 2 incorporated changes necessary to supply heat to these other buildings once No. 66 was demolished. Some of the changes required pipe work outside of the contract limit line. On the revised drawings, an irregular circle (not a contract limit line) had been specially drawn outlining and calling attention to all of the new work to be done. This new line clearly showed that some of the work was outside of the contract limit line. Ideally, the limit line should have been moved by the defendant to include this new work. Such was not done. Amendment No. 4 similarly modified earlier plans and also referred to items both inside and outside of the contract limit line.

Plaintiff then submitted a bid including estimated costs for the new work but ignoring costs for work outside of the limit line, and was awarded the contract.

Sometime thereafter plaintiff inquired with reference to the additional work outside of the contract limit line. The Contracting Officer's Representative replied that this work had been added to the contract prior to bidding by Revision "b" under Amendment No. 2.

Plaintiff sought additional compensation for the disputed work. The claim was denied by the Contracting Officer's Representative. A timely appeal was made to the Board which held that the additional work outside of the contract limit line as depicted in Revision "b" of Amendment No. 2 was part of the contract, and plaintiff was not entitled to additional compensation. Plaintiff accordingly filed a petition in this court on October 20, 1971.

■ Plaintiff contends that the Board erred as a matter of law in finding that the additional work (outside of the contract limit line) was to be included under the contract as executed by the parties. It is undisputed that the Board's conclusion is not final and binding on this court since it involves contract interpretation which is a question of law, International Telephone and Telegraph v. United States, 453 F.2d 1283, 1288, 197 Ct.Cl. 11, 20 (1972); HRH Constr. Corp. v. United States, 428 F.2d 1267, 1271, 192 Ct.Cl. 912, 918 (1970); Paschen Contractors, Inc. v. United States, 418 F.2d 1360, 1361, 190 Ct.Cl. 177, 180 (1969).

■■ Plaintiff interpreted the notations on the drawings concerning the additional work as merely "informational", i. e. the notations were for coordination purposes between the plaintiff and the other contractors who plaintiff thought would be doing the additional work. Plaintiff, feeling that this was a reasonable interpretation, would have this court invoke the *contra proferentem rule*.[3] Whether or not this was a rea-

---

delays is properly pertinent to the question of quantum and would therefore be postponed until that matter should be reached.

3. As this court has mentioned often, if a discrepancy in contract language creates an ambiguity, and if the contractor's interpretation falls within the zone of rea-

sonable interpretation is not material, because the discrepancy in this case created more than a mere ambiguity; it evidenced an *obvious omission* on the part of the government. This imposed upon the contractor a duty to inquire if he intended to benefit from his interpretation in the future. Space Corp. v. United States, 470 F.2d 536, 539, 200 Ct.Cl. —, — (1972); Allied Contractors, Inc. v. United States, 381 F.2d 995, 1000, 180 Ct.Cl. 1057, 1064 (1967); Beacon Constr. Co. v. United States, 314 F.2d 501, 504, 161 Ct.Cl. 1, 7 (1963).

Prior to submission of its bid, plaintiff received the revised drawings which reflected the new work without altering the contract limit line. Plaintiff also received additional detailed drawings which described only the work outside of the limit line. There would have been no reason for the government to send these detailed drawings if the contractor was not meant to include this additional work when submitting its bid. This knowledgeable and experienced contractor should also have known that it was unlikely that the government specifications would have required laying pipe to an imaginary point without any instructions as to capping or connections. This would have been the result if plaintiff's interpretation were accepted.

Faced with the patently obvious discrepancy between the placement of the contract limit line and the additional work, plaintiff should have inquired. This pre-bid inquiry would have clarified the situation and allowed the contractor to bid in accordance with the requirements of the contract.

In light of the above, the plaintiff is not entitled to recover damages from the government for work which was outside of the contract limit line. Although it was the government's error in not altering the limit line, the error was or should

have been obvious to the contractor thus necessitating pre-bid inquiry to clarify the discrepancy. Having failed to seek clarification, the plaintiff is now barred from recovering on its claim.

Accordingly, we find that the Board's opinion withstands a Wunderlich Act review. The plaintiff's motion for summary judgment is denied; the defendant's cross motion for summary judgment is granted; and the petition is hereby dismissed.

---

sonableness, the ambiguity will be construed against the government as the author of the ambiguous document. Brezina Constr. Co., Inc. v. United States, 449 F.2d 372, 375, 196 Ct.Cl. 29,

33 (1971); Gorn Corp. v. United States, 424 F.2d 588, 592, 191 Ct.Cl. 560, 567 (1970); Peter Kiewit Sons' Co. v. United States, 109 Ct.Cl. 390, 418 (1947).