WICKHAM CONTRACTING CO., INC.

v.

The UNITED STATES.

No. 327–75.

United States Court of Claims.

Dec. 15, 1976.

Eugene Drexler, atty. of record, New York City, for plaintiff.

Donnie Hoover, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before SKELTON, NICHOLS and KASHIWA, Judges.

PER CURIAM:

This case comes before the court on defendant's motion, filed September 14, 1976, pursuant to Rule 54(b)(3)(iii), requesting that the court adopt, as the basis for its judgment in the case, the recommended decision of Trial Judge Thomas J. Lydon, filed July 22, 1976, pursuant to Rule 166(c) on plaintiff's motion and defendant's cross-motion for summary judgment, since plaintiff has failed to file a request for review by the court thereof and the time for so filing pursuant to the Rules of the court has expired. Upon consideration thereof, without oral argument, since the court agrees with the recommended decision, as hereinafter set forth, it hereby grants defendant's motion and adopts the decision as the basis for its judgment in this case. Therefore, plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed.

## OPINION OF TRIAL JUDGE

THOMAS J. LYDON, Trial Judge:

This government contract case involves a review, under standards of the Wunderlich Act (68 Stat. 81, 41 U.S.C. §§ 321–22 (1970)), of a decision by the Armed Services Board of Contract Appeals (Board), denying plaintiff's claims for (1) additional costs by way of a contract price adjustment, and (2) a 2-month time extension. Both claims were premised on a scale error contained on a contract drawing. (*Wickham Contracting Co.*, ASBCA No. 19069, 75–1 BCA ¶ 11,248.)[1] On review, it is concluded that the Board decision denying plaintiff's claims is correct in fact and in law.[2]

---

1. Plaintiff moved for summary judgment seeking to overturn the Board decision "on the grounds that the decision is arbitrary, capricious, erroneous in law and against the weight of the evidence." Defendant cross-moved for summary judgment in support of the Board decision and responded in opposition to plaintiff's motion for summary judgment. Plaintiff, by letter dated July 1, 1976, to the trial judge, waived its right to file a response to defendant's cross-motion for summary judgment.

2. In denying plaintiff's claim for a 2-month extension of time, which plaintiff sought to protect itself against any possible liquidated damage assessment, the Board found that while defendant unreasonably delayed responding to plaintiff's request for a contract modification formally asserting the fact that a $1' = 200'$ scale on the contract drawing was erroneous, plaintiff acted unreasonably if it delayed the start of the work pending an answer to its modification request. The Board noted that once plaintiff was on the work site there was no uncertainty or ambiguity as to how the work was to be performed. Plaintiff's president conceded that once on the site the scale error on the drawing was obvious. The Board found that plaintiff did not need any clarification or interpretation from the government as to how to proceed with the work. The record supports the Board's findings. Moreover, plaintiff does not contest this portion of the Board decision, presumably because no assessment of liquidated damages was made against plaintiff. Under the circumstances, plaintiff is considered to have abandoned any challenge to the Board decision on the 2-month time extension claim. *See Nossen v. United States*, 416 F.2d 1362, 1371, 189 Ct.Cl. 1, 18 (1969).

On July 23, 1973, plaintiff was awarded a construction contract by the Corps of Engineers, U.S. Army Engineer District, New York, for Replacement of Primary Underground Cable at the Military Ocean Terminal, Bayonne, New Jersey. The contract price was $44,000. In essence, the contract required the furnishing and installation of four manholes, underground electrical cable, a concrete duct bank within which to run the cable, and certain accessories for the overall system. The contract documents contained only a single drawing and it provided the setting for the dispute which resulted in the Board decision here under review.

The contract drawing contained two different scales. To the left of the title block, in the lower right-hand corner of the drawing, was a calibrated graphic or bar scale 3 inches long with marked footage designations. Immediately to the left of this graphic or bar scale were the figures; $1'' = 200'$.[3] In the middle section of the drawing under the heading "Plan" appeared the following figures: Scale $1' = 200'$. It is undisputed that the $1' = 200'$ scale was a drafter's error and should have read $1'' = 200'$. The Board found that plaintiff based his bid on the Plan scale of $1' = 200'$. The issue is whether plaintiff is entitled to recover additional costs of performance because of its reliance on the erroneous scale set out on the contract drawing which caused it to underbid.

■ Initially, it must be observed that plaintiff's petition and moving brief lack the substantive particularity, supported by appropriate record references, necessary to overcome the finality that otherwise attaches to findings made by a Board whose decision is subject to Wunderlich Act review. It is not the court's function to remedy this deficiency by an independent and/or *de novo* review of the record. *Jet Constr. Co. v. United States*, 531 F.2d 538, 540–41, 209 Ct.Cl. 200, 203–04 (1976). *Hicks Corp. v. United States*, 487 F.2d 520, 521, 203 Ct.Cl. 65, 68 (1973). A review of the record, however, discloses the existence of substantial evidence supportive of the Board findings. Under these circumstances, the court is bound by such findings even though the record would support contrary and/or modified findings in some respects. *Allied Contractors, Inc. v. United States*, 176 Ct.Cl. 1095, 1098–99 (1966).

■ The Board found that the possibility of an error relative to the scale $1' = 200'$ on the drawing was manifest. Parenthetically, plaintiff challenges this Board finding on the sole ground that it is irrelevant. Such a challenge, under the circumstances, is without merit. The Board noted that use of a $1'$ scale was unusual. Moreover, the presence on the drawing of another scale figure $1'' = 200''$ created a patent discrepancy.[4] The Board concluded that plaintiff should have recognized the possi-

---

**3.** To eliminate confusion with respect to quoting measurement scales, underscoring has been used rather than quotations marks throughout this opinion.

**4.** The Board found no need to decide whether other factors should be considered in this regard. It specifically referred to the fact that utilization of the erroneous scale would produce bizarre results relative to the size of surrounding features and landmarks set out on the drawing. For example, use of the erroneous scale would result in roughly 3, 6 or 8 feet wide streets instead of actual width streets of approximately 57, 75 or 100 feet. Such a reading of the drawing would be unreasonable. *See Blake Constr. Co. v. United States*, 202 Ct.Cl. 794, 798 (1973). The Board noted that if plain-

tiff had used the erroneous scale to determine the dimensions of the drawing landmarks it would have immediately confirmed the drawing scale error. Accordingly, plaintiff's argument that there was nothing on the face of the drawing to show which scale was appropriate is not entirely accurate. Another factor was that a site inspection would have plainly revealed the scale drawing error, a fact readily conceded by plaintiff's president. While the Instructions To Bidders contained a clause advising that bidders should visit the site and that failure to do so would not relieve bidders from responsibility for properly estimating the cost of the work, plaintiff's president testified he rarely visited work sites before submitting bids because most of his work was interior in nature and infrequently involved outside work.

bility of a drawing error when bidding.[5] It is established that plaintiff was under an obligation to study all aspects of the contract drawing before submitting its bid, *see Richardson Camera Co. v. United States*, 467 F.2d 491, 496, 199 Ct.Cl. 657, 665 (1972), and its failure to note the discrepancy in the scale data on the drawing rightly impinges on the reasonableness of its bid submission. *See Martin Lane Co. v. United States*, 432 F.2d 1013, 1020, 193 Ct.Cl. 203, 217 (1970).

■ Under circumstances where a patent and glaring discrepancy exists in a contract drawing, and such a discrepancy would be recognized by a reasonable bidder, there is a burden imposed on such a bidder to seek clarification of said discrepancy from an appropriate government official before submitting a bid, if the bidder, subsequent to an award to it, hopes to rely on its unilateral resolution of the discrepancy issue as a basis for a subsequent contract price adjustment claim. *Merando, Inc. v. United States*, 475 F.2d 601, 201 Ct.Cl. 23 (1973); *Space Corp. v. United States*, 470 F.2d 536, 539, 200 Ct.Cl. 1, 5–6 (1972); *Beacon Constr.*

*Co. v. United States*, 314 F.2d 501, 504, 161 Ct.Cl. 1, 7 (1963). This proposition is for application in situations where a bidder knew, as well as in situations where a bidder should have known, of the discrepancy. The latter situation is present in this case. *Allied Contractors, Inc. v. United States*, 381 F.2d 995, 1000, 180 Ct.Cl. 1057, 1064–65 (1967). Indeed it has been said that whether a bidder knew or did not know of the discrepancy prior to submitting its bid is not a governing factor. "It is the existence and type of the discrepancy, not necessarily the contractor's actual knowledge of it, that imposes a burden of inquiry on the contractor * * *." *HRH Constr. Corp. v. United States*, 428 F.2d 1267, 1272, 192 Ct.Cl. 912, 920–21 (1970).[6]

■ The Board recognized the applicability of the above legal proposition to the instant situation, although it did not cite any of the above cases, but was dissuaded from basing its decision thereon because of its finding that the government had knowledge of the drawing error prior to contract award.[7] *See Helene Curtis Indus., Inc. v.*

---

5. The Board also found that plaintiff was not actually aware of the error at the time it prepared and submitted its bid, was actually misled by the drawing error, and actually used the erroneous scale in preparing its bid estimates. Although plaintiff was unable to produce its bid work papers in support of its position that its bid was prepared on the basis of the erroneous scale, the Board accepted the testimony of plaintiff's president that this was so because of the absence of any inconsistent evidence.

6. Article 2 of the General Provisions of the contract provided in pertinent part. " * * * In case of discrepancy either in the figures in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing * * *." Further, Clause SP–2(c) of the Special Provisions of the contract provided in pertinent part: "The contractor shall check all drawings furnished him immediately upon their receipt and shall promptly notify the Contracting Officer of any discrepancies. * * * The contractor shall compare all drawings and verify the figures before laying out the work and will be responsible for any errors which might have been avoided thereby."

7. The government's estimator, the authorized representative of the contracting officer for the purpose of preparing the government's estimate of the cost of the work and for initiating drawing corrections, noticed the scale error when preparing the estimate from the drawing in question. The record does not indicate when precisely he discovered the error. His testimony was to the effect the error was an obvious one. However, contrary to the responsibility imposed on him, the estimator did not report the scale drawing error to his superiors, or to the contracting officer, nor did he initiate any Information For Bid (IFB) amendment for distribution to prospective bidders. The Board imputed the estimator's actual knowledge of the drawing error to the government and hence to the contracting officer. However, there is no evidence in the record that the contracting officer, or any other responsible government official connected with the award of plaintiff's contract, was actually aware of any drawing error prior to the opening of the bids, and there is no Board finding that the contracting officer knew at the time of award that plaintiff's bid was based on the erroneous scale. *Cf. Wender Presses, Inc. v. United States*, 343 F.2d 961, 963, 170 Ct.Cl. 483, 486–87 (1965). While there is language in *Wender Presses* on which one could question, the Board's imputation of

*United States*, 312 F.2d 774, 777–78, 160 Ct.Cl. 437, 443–44 (1963). The Board also alluded to the well established principle that the government impliedly warrants the suitability of its drawings for their intended use. *See Thompson Ramo Wooldridge, Inc. v. United States*, 361 F.2d 222, 230, 232, 175 Ct.Cl. 527, 538, 542 (1966). At this stage, the Board in essence, viewed both parties as being at fault. *See Aerojet-General Corp. v. United States*, 199 Ct.Cl. 422, 436–39, 467 F.2d 1293, 1302–03 (1972). The Board synthesized the matter as follows:

> Other things being equal, we might well regard the Government's duty to disclose its actual knowledge to the bidders, including appellant, as a higher duty superseding a bidder's duty to recognize and seek clarification of an obvious drawing error of which it did not have actual knowledge. However, in the present case later events presented appellant with a last clear chance to avoid damage from the drawing error.

Like the Board, I find no need to resolve this troublesome question of which duty prevails when on a collision course since another basis exists, as was found by the Board, on which one could properly rest a decision.

On bid opening on June 26, 1973, it was disclosed that five bids had been submitted to perform the contract work. The low bid was $44,000, submitted by plaintiff, and the high bid was $85,500. The next lowest bid was $51,942. The government's estimate for performing the work was $63,000. Under standard procedures, the percentage differential between plaintiff's low bid and the government's estimate required the government to seek verification from plaintiff of its bid.

On June 27, 1973, the bid opening officer of defendant telegrammed plaintiff for verification of its bid. Failing to receive a prompt response to this verification inquiry, a subsequent telephone conversation between plaintiff's president and the bid opening officer took place. The Board found it undisputed that in this telephone conversation plaintiff's president called the bid opening officer's attention to the presence of two different scales on the drawing. The Board found as a fact that plaintiff actually became aware of the drawing scale error when its president examined the drawing to verify his bid.[8]

The bid opening officer asked plaintiff's president to either confirm his bid or ask for withdrawal of his bid based on a bid mistake. Plaintiff subsequently confirmed his bid without qualification. In his testimony, as noted by the Board, plaintiff's president believed he had bid on a correct interpretation, *i. e.*, there was no error in his bid in that it was based on the scale $\underline{1'} = \underline{200'}$. He testified it was the government's error, not his error. He gave no consideration to the fact that this scale was erroneous, a fact he was aware of when called upon to verify his bid, and since his bid was based thereon it would constitute a

---

knowledge of the error to the contracting officer under the circumstances, I do not accept nor reject the Board's opinion in this regard because of the disposition of the case on other grounds and the fact that a bid verification was requested in this case, a crucial fact missing in the *Wender Presses* case.

**8.** The Board found it unnecessary to resolve the conflicting testimony as to whether plaintiff's president told the bid opening officer that he had bid on the basis of the $\underline{1'} = \underline{200'}$ scale, and that if the correct scale was $\underline{1''} = \underline{200'}$ plaintiff intended to seek a contract modification after award to it, and as to whether the bid opening officer told plaintiff's president that the $\underline{1'} = \underline{200'}$ scale was erroneous. Contrary to plaintiff's assertion, there is no Board finding that the government knew that plaintiff's bid was

based on the erroneous scale and that this served to explain its ostensibly low bid. Since the record is conflicting on these matters, the court cannot find them to be facts on any independent review of the evidence. *Cf. Maxwell Dynamometer Co. v. United States*, 386 F.2d 855, 870, 181 Ct.Cl. 607, 631 (1967). Accordingly, the contentions of each party that the other, aware of the contrary interpretation, must be bound thereby because it executed the contract alert thereto, must be rejected for lack of any necessary factual predicate. *Compare Chris Berg, Inc. v. United States*, 426 F.2d 314, 192 Ct.Cl. 176 (1970), relied on by plaintiff, and *WPC Enterprises, Inc. v. United States*, 323 F.2d 874, 163 Ct.Cl. 1 (1963), relied on by defendant.

mistake in bid. He further testified he did not want to withdraw his bid because it might affect his ability to get future bonding as well as his credibility. There is nothing in the record which would tend to support plaintiff's fears in this regard. Moreover, such reasons are not deemed sufficient to excuse plaintiff from the conscious act it performed in entering into the contract fully aware that its bid was based on an erroneous scale on the contract drawing. *Massman Constr. Co. v. United States*, 60 F.Supp. 635, 642–44, 102 Ct.Cl. 699, 716–19, *cert. denied*, 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed. 1985 (1945).

On July 19, 1973, defendant sent plaintiff a Notice of Award, which was followed on August 3, 1973, by a fully executed contract, together with a Notice To Proceed. On August 8, 1973, plaintiff wrote defendant advising that "[a]ctual field measurements indicate a discrepancy between the 1′ = 200′ scale indicated on contract drawing File No. 7690–1601 [and] actual field conditions." Plaintiff asked the government to investigate immediately and to modify the contract as required. On September 12, 1973, the contracting officer wrote plaintiff that the scale 1′ = 200′ on the drawing was erroneous but that the graphic scale 1″ = 200′ on the drawing was correct. After a further exchange of correspondence, plaintiff on November 13, 1973, submitted to the contracting officer its claim for $54,500, representing the increase in the contract price due it because of its under bid resulting from the erroneous scale on the contract drawing. The Board action here under review resulted from the contracting officer's formal denial of the claim.

The Board, in denying plaintiff's claim for a price adjustment based on the erroneous scale on the contract drawing, concluded as follows:

> When the Government requested verification of appellant's bid, appellant by its own admission focused on the two scales on the drawing. We have found (para. 23) that appellant at that time actually became aware of the drawing error. Thus at that time, after bid opening and before award, appellant and the Government were both on equal footing, actually aware of the drawing error.
>
> In such a situation, where appellant had failed to notice the obvious error before bidding, and then before award became actually aware of its failure, but refused to admit its oversight and avail itself of the proffered [sic] opportunity to assert a mistake in bid, we conclude that appellant acted unreasonably. In a situation where it could have avoided the consequences of the Government's failure to disclose the drawing error and of its own failure to see the error sooner, it nevertheless consciously chose to ignore the error and accept the contract at its original price. In doing so, it assumed the risk of the higher costs.

The record in this case fully supports the Board's conclusions set out above. Moreover, these conclusions are fully compatible with case law. If a contractor enters into a contract aware of the fact of defective specifications, it is not entitled to recover on a claim based on these defective specifications. *R. E. D. M. Corp. v. United States*, 428 F.2d 1364, 192 Ct.Cl. 891, 902–03 (1970). At the time it was requested to verify its bid, plaintiff was aware of the drawing scale error, and whatever duty the government may have had before to advise plaintiff of the error faded. Both sides had equal knowledge of the error at this point. *Donald M. Drake Co. v. United States*, 439 F.2d 169, 172, 194 Ct.Cl. 549, 555 (1971). Plaintiff confirmed its bid after being asked to verify it. This verification request was certainly a warning that the bid might be inadequate. At this time the drawing error was known to both sides. Confirmation of its bid under these circumstances was surely "an unreasonable assumption of risk" by plaintiff. *Highway Products, Inc. v. United States*, 530 F.2d 911, 208 Ct.Cl. 926 (1976); *see also Rixon Electronics, Inc. v. United States*, 536 F.2d 1345, 1351, 210 Ct.Cl. 309, 319 (1976).[9] If plaintiff em-

---

**9.** Plaintiff complains that if it withdrew its bid it would have been deprived of a fair chance to get the contract. The Board noted that plaintiff could have avoided this by requesting can-

barked on a "ruinous course of action," it was a journey it chose to take with its eyes wide open. It certainly did not act reasonably under the circumstances and the Board rightly denied its claim. *See Ling-Temco-Vought, Inc. v. United States*, 475 F.2d 630, 201 Ct.Cl. 135 (1973); *see also Snyder Corp. v. United States*, 68 Ct.Cl. 667, 676 (1930). Since plaintiff was aware of the drawing error at the time it entered into the contract, refusing an opportunity to withdraw its bid based on the drawing error, it is not entitled to recover additional costs by way of a contract price adjustment based on said error. *See Union Painting Co. v. United States*, 198 F.Supp. 282, 284 (D.C.Alaska 1961).

## CONCLUSION

For the above reasons, defendant's cross-motion for summary judgment is granted, plaintiff's motion for summary judgment is denied and plaintiff's petition is dismissed.

cellation of the IFB as defective and requesting resolicitation of bids. Plaintiff sees this as a duty imposed on the government without any request by plaintiff. Under the circumstances, there was no such obligatory duty and plaintiff cites no regulation or case imposing any such duty on the government. ASPR 2.404–1(b)(i), (32 C.F.R. 1974), cited by plaintiff, advises that the contracting officer *may* cancel an IFB because of inadequate or ambiguous specifications. It does not say he *must* cancel. (Emphasis supplied.) On the other hand, it is reasonable to suppose that on a resolicitation plaintiff would not have received an award. Its underbid claim of $54,500 when added to its bid of $44,000 would produce a total bid of $98,500. Such a bid figure would be $35,500 over the government's estimate of $63,000 and $46,558 over the second lowest bidder. There is no reliable evidence in the record relative to the actual drawing scale used by the other four bidders in preparing their bid estimates. The Board's parenthetical supposition that these bidders "most likely" bid on the basis of the correct scale is not considered a factual finding. However, the record is crystal clear that the government's estimate was based on the correct scale. Finally, plaintiff argues that the integrity of the bidding system was violated because the government did not reject plaintiff's bid which was based on an erroneous drawing scale, citing ASPR 2.301 and ASPR 2.404–2(a), (b), and (d). As indicated earlier, there is no finding that the government knew at the time of bid verification or at the time of award that plaintiff's bid was based on the erroneous drawing scale. It would seem to me that to allow recovery herein might do more of an injustice to the integrity of the bidding system for, in effect, plaintiff, as high bidder, obtained a contract at the expense of four lower bidders.