**ROBINS MAINTENANCE, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5010.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 20, 2001.

J. Hatcher Graham, McManus & Graham, of Warner Robins, GA, for plaintiff-appellant.

Scott D. Austin, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for defendant-appellee. With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General; David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief was John T. Lauro, Trial Attorney, Air Force Legal Services Agency, Commercial Litigation Division, Department of the Air Force, of Arlington, VA.

Before NEWMAN, BRYSON and DYK, Circuit Judges.

DYK, Circuit Judge.

This case involves a claim by Robins Maintenance, Inc. ("RMI") for an equitable adjustment to a grounds maintenance contract with the Robins Air Force Base ("Robins AFB") based on a theory of defective specifications. We conclude that the Court of Federal Claims properly granted the government's motion for summary judgment because RMI's knowledge of the errors in the specifications precluded recovery, and RMI abandoned all other claims not based on the defective specifications.

## BACKGROUND

On April 30, 1992, the United States Air Force ("Air Force") issued a request for proposals for a grounds maintenance contract at the Warner Robins Air Logistics Center at Robins AFB, Georgia. Initial bids were due on June 18, 1992; negotiations were to occur in early September 1992; and final offers were due on Novem-

ber 27, 1992. The contract was for a one-year base period with four annual option periods. RMI was the current contractor, and had performed grounds maintenance at Robins AFB since 1982.

The contract required that the successful bidder, RMI, "provide all personnel, equipment, tools, materials, supervision, and other items and services necessary to perform Grounds Maintenance ... at Robins AFB." The bid document at the heart of the controversy was Technical Exhibit 2, which described the acreage and square footage of the base grounds, so that bidders could estimate the number of labor hours and costs associated with bidding on the contract. Technical Exhibit 2 identified 500 acres of "improved" grounds[1] and 13 acres of "enhanced" grounds[2], instead of the correct acreage of 1152.06 and 29.51, respectively. The Exhibit specifically identified the figures as "estimates." After Mr. Everett Dykes, Jr., RMI's then-president, and Mr. William Dykes, RMI's then-vice president and current president, attended a pre-proposal conference in late May 1992, they concluded that the previous maintenance contract and the new maintenance contract covered approximately the same area. At this point, appellant contends that Mr. Everett Dykes, Jr., informed the Air Force's contracting officer, Ms. Betty Holley, that there were errors in Technical Exhibit 2. Allegedly, Ms. Holley told Mr. Dykes not to "start any trouble" and to proceed to bid on the solicitation as it was written.

RMI acknowledges that it was fully aware of the inaccurately low estimates in Technical Exhibit 2 at the time it bid on the contract. Furthermore, RMI knew the correct acreage based on the prior maintenance contract.

Despite the errors, RMI bid on and subsequently won the maintenance contract. From July 1, 1993, until October 19, 1995, RMI performed the contract without seeking any adjustment for the inaccurate specifications. On October 19, 1995, RMI filed an uncertified equitable adjustment claim, which was later supplemented in December 1995. Five months later, on May 6, 1996, the Air Force and RMI agreed to modify the contract to indicate the correct acreage. The modification involved updating Technical Exhibit 2 and the corresponding maps included in Technical Exhibit 3, but did not change the amount that RMI was to receive for the work. On August 29, 1996, RMI filed a certified claim seeking an equitable adjustment of $5,239,130 for its additional work prior to the modification. The Air Force denied RMI's certified claim on April 17, 1997.

In August 2000 the Court of Federal Claims granted the government's motion for summary judgment, holding that an incumbent contractor, such as RMI, may not recover based on a defective specifications theory when it knew that the specifications were inaccurate. *Robins Maintenance, Inc. v. United States*, No. 97–488C, slip op. at 5 (Fed.Cl. Aug. 23, 2000). Furthermore, the court found that all of RMI's claims were based on the defects in the specifications, and that any other claims had been abandoned. *Id.* RMI appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I. *Standard of Review*

Summary judgment is appropriate when "there is no genuine issue as to any mate-

---

1. "Improved" grounds are "areas within the build-up section of an installation which contains lawns, landscaping, parade grounds...."

2. "Enhanced" grounds are "important to the Air Force and base image for visits of important guests and off-base public."

rial fact and ... the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). We review a trial court's grant of a motion for summary judgment without deference. *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 751 (Fed.Cir. 1999).

## II. *Contractor Knowledge of Errors in the Specifications*

■ We conclude that the Court of Federal Claims properly granted the government's motion for summary judgment because, even though RMI knew about the defects in the specifications, it nonetheless chose to submit a bid and agreed to the contract.

■ Whenever the government uses specifications in a contract, there is an accompanying implied warranty that these specifications are free from errors. *See United States v. Spearin*, 248 U.S. 132, 137, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918) (permitting a contractor to rely on an implied warranty by the government). The test for recovery based on inaccurate specifications is whether the contractor was misled by these errors in the specifications. Beginning at least with the Supreme Court's decision in *Spearin*, the cases have made clear that there can be no recovery unless the contractor has been "misled." *See, e.g., Spearin*, 248 U.S. at 136, 39 S.Ct. 59 ("[T]he contractor should be relieved, if he was misled by erroneous statements in the specifications."); *Ragonese v. United States*, 128 Ct.Cl. 156, 120 F.Supp. 768, 771 (1954) (Contract did not mention that contractor was likely to encounter large quantities of subsurface water, thereby misleading the contractor; contractor entitled to an equitable adjustment.). Where the contractor is not misled, it cannot claim an equitable adjustment. For example, in *Wickham Contracting Co., Inc. v. United States*, 212 Ct.Cl. 318, 546 F.2d 395, 400 (1976), the contractor based its bid on an erroneous scale in a contract drawing. When the government asked for verification of plaintiff's bid, plaintiff became aware of the error in scale. "Since plaintiff was aware of the drawing error at the time it entered into the contract, refusing an opportunity to withdraw its bid based on the drawing error, it is not entitled to recover additional costs by way of a contract price adjustment based on said error." *Id.* at 401.

The decision of our predecessor court in *Helene Curtis Industries, Inc. v. United States*, 160 Ct.Cl. 437, 312 F.2d 774 (1963), is closely in point. In *Helene Curtis*, the Army invited bids on a contract to supply chlormelamine, a disinfectant. *Id.* at 776. The plaintiff bid on supplying this disinfectant without taking into account the need to grind up the chlormelamine particles during the manufacturing process. As a result of this omission, plaintiff began to experience costly manufacturing difficulties based on the lack of grinding. *Id.* Our predecessor court held that the contractor could recover for the grinding problems associated with the first contract because it was misled by the specifications. However, the contractor could not recover on the second contract because "it made the extension agreement with its eyes open and therefore when the contract award was subsequently made ... it could no longer assert that it was relying on a misrepresentation." *Id.* at 779. *See also R.E.D.M. Corp. v. United States*, 192 Ct. Cl. 891, 428 F.2d 1304, 1310 (1970) (allowing an equitable adjustment for the first army contract containing erroneous specifications, but denying the requested adjustment for the "follow-on" contract because the contractor was no longer misled by the specifications); *Firestone Tire & Rubber Co. v. United States*, 214 Ct.Cl. 457, 558 F.2d 577, 590 (1977) (denying recovery for "additional costs attributable

to drilling difficulties because at the time that [the contractor] entered into its prime contract it was fully aware of those then unresolved problems....").

█ Nonetheless, appellant argues that its case is unique, and does not fall within the strict *Spearin* rule requiring that the contractor be misled, because RMI informed the Air Force's contracting officer of the errors in Technical Exhibit 2, and the contracting officer told RMI to bid on the solicitation as it was written. Although this case raises an issue of first impression for this court, RMI's notice to the government does not alter the test for recovery for defective specifications. This is not a situation in which the contractor identified a possible error in the contract, and the government led the contractor to believe that there was no error. Under such circumstances, recovery might well be available. Here, in contrast, there is simply no evidence that RMI was misled by the inaccurate acreage estimates at the time it submitted its bid. RMI alleges only that it told the government that there was an "error" in the specification. After Mr. Everett Dykes, Jr., RMI's then-president, told Ms. Betty Holley, the contracting officer, about the errors in Technical Exhibit 2, she allegedly responded by telling him to bid on the erroneous solicitation. There is no claim that even after this exchange between the government and the contractor, the contractor thought that the acreage estimates were anything but an error. Indeed, the allegation is to the contrary. In his deposition, Mr. William Dykes admitted that both he and Mr. Everett Dykes, Jr., never believed that the numbers set forth in the solicitation were accurate representations of the acreage of Robins AFB, and that they "knew that the acreages set forth in the solicitation were incorrect at the time that [RMI] submitted [its] bid." Mr. William Dykes further conceded that both men were fully aware of the huge discrepancy between the actual acreage and the acreage quoted in the solicitation. Also, RMI's status as the incumbent contractor and its ten years of service performing grounds maintenance for Robins AFB, clearly show that RMI was aware of the accurate acreage of the grounds and was not misled. RMI cannot recover because it made an affirmative decision to bid on a specification, which it knew to be inaccurate. As our predecessor court noted in *Johnson Controls, Inc. v. United States,* 229 Ct.Cl. 445, 671 F.2d 1312 (1982): "If a contractor enters into a contract aware of the fact of defective specifications, it is not entitled to recover on a claim based on these defective specifications." 671 F.2d at 1320 (quoting *Wickham Contracting Co.,* 546 F.2d at 400).

### III. Abandonment of All Claims Not Based on the Erroneous Acreage Estimates

█ RMI contends that the Court of Federal Claims improperly dismissed some of appellant's claims that were not based on the errors in the specifications. Appellant points to Mr. William Dykes's deposition testimony regarding additional work that it performed in connection with, inter alia, ditch maintenance, erosion control, and tree trimming. However, in both RMI's complaint and the Joint Preliminary Status Report submitted to the Court of Federal Claims, there was no mention of any claims based on additional work that it performed, other than the additional work that it performed because of the acreage in the specifications. For example, all three counts of the complaint contend that RMI is entitled to an equitable adjustment because of the government's "grossly incorrect" acreage estimates. Similarly, in the Joint Preliminary Status Report, RMI focuses on damages as a result of the government's erroneous acreage estimates. By failing to raise additional claims in its complaint or to include them in the Joint

Preliminary Status Report, RMI effectively abandoned these claims.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims.

## COSTS

No costs.