**E.L. HAMM & ASSOCIATES, INC., Appellant,**

v.

**Gordon R. ENGLAND, Secretary of Navy, Appellee.**

No. 03–1527.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 17, 2004.

David W. Lannetti, Vandeventer Black LLP, of Norfolk, Virginia, argued for appellant. With him on the brief was Michael L. Sterling.

Kenneth D. Woodrow, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Mark A. Melnick, Assistant Director. Of counsel was Mark R. Wiener, Attorney, Navy Litigation Office, Washington Navy Yard, of Washington, DC.

Before MAYER, Chief Judge, RADER, and PROST, Circuit Judges.

PROST, Circuit Judge.

E.L. Hamm & Associates, Inc. (Hamm) appeals the decision of the Armed Services Board of Contract Appeals (Board) upholding the contracting officer's (CO's) decision denying Hamm's claim for an equitable adjustment. *In re E.L. Hamm & Assocs., Inc.*, ASBCA No. 51838, 2003 WL 1795675 (Apr. 1, 2003). At the Board, Hamm claimed, among other things, it was entitled to $135,930.18 for additional policing work because of a defect in the specification whereby the government understated the policing acreage. Although the Board found that the contract between the Navy and Hamm was defective as to the policing acreage, it denied Hamm's claim for an equitable adjustment based on its finding that Hamm was not misled by the defect. We conclude that this finding was not supported by substantial evidence because Hamm relied on the understated policing acreage and the defect was not patent. We therefore reverse and remand for a quantum hearing.

## BACKGROUND

On October 14, 1993, the Department of the Navy (Navy) awarded Hamm a combination fixed-price and indefinite-quantity contract. The fixed-price portion of the contract included management and maintenance of family housing units and other real property at seven housing areas in or near Norfolk, Virginia. The contract provided for a base year and four option years. The base year as awarded covered a ten-month period, but a General Accounting Office award protest caused the Navy to suspend contract performance from November 4, 1993, to April 1, 1994. Upon resolution of the protest, the Navy adjusted the base-year term to cover a six-month period beginning on April 1, 1994. Thereafter, the Navy exercised two options, the first for twelve months and the second for nine months. Consequently, the contract lasted a total of twenty-seven months.

Particularly relevant to this appeal, the contract required seasonal grass mowing and daily policing of the housing area grounds. To that end, the contract contained three specific line items, as follows:

| Item No. | Supplies/Services | Unit | Prorated Award Quantities (10 months) |
|----------|-------------------|------|----------------------------------------|
| 0001BD | General mowing (per clause C.11) | AC | 3959 |
| 0001BE | Prestige mowing (per clause C.11) | AC | 178 |
| 0001BG | Policing of grounds (per clause C.11) | AC | 32,856 |

Section C.11 required general and prestige mowing thirty-two weeks per year, from April through October. It also required daily policing of grounds for which lawn maintenance was required, in addition to all streets, sidewalks, playground areas, parking lots, gutters, and alleys. On April 14, 1994, Hamm subcontracted with Trident Services for general and prestige mowing. Over the course of the contract, both Hamm and Trident Services employees performed the required policing work.

The Board found that Hamm discovered a discrepancy between the mowing and policing acreages in early 1995 after receiving a draft contract modification from the Navy. After analyzing the contract information in more detail, Hamm claims to have found that the acreages for both policing and mowing were essentially the same. Noting that the policing acreage included both the mowing acreage plus the acreage for streets, sidewalks, playground areas, parking lots, gutters, and alleys, Hamm concluded that the acreage for policing must have been understated.

On April 10, 1995, Hamm requested a price modification from the CO because of the understated policing acreage. The CO denied the request. Hamm then submitted a certified claim for $112,031.39 on July 30, 1996, for 48.04 additional acres of policing. Thereafter, Hamm hired a professional engineer to review the Public Works Center (PWC) drawings attached to the contract—drawings 12,628 through 12,628R—to determine the actual mowing and policing acreages. Hamm's expert calculated a total mowing area of 164.82 acres and a total policing area of 244.7 acres. Comparing those results to the acreages listed in the contract, Hamm's expert found that both the mowing and policing acreages were understated. Hamm therefore submitted a revised claim to the Navy for $135,930.18 for additional policing and $23,088.49 for additional mowing on June 12, 1997, concurrently requesting a Final Contracting Officer's Decision (FCOD). Hamm later incorporated this claim into its Consolidated Request for Equitable Adjustment, submitted April 14, 1998, to address several contract issues. Subsequently, Hamm certified this request and submitted it for a FCOD on August 31, 1998. The CO issued a Final Decision on October 29, 1998, denying Hamm's Consolidated Request, including the claim for additional policing and mowing.

Hamm timely appealed to the Board on January 15, 1999. The consolidated appeals were docketed as ASBCA No. 51970, with ASBCA No. 51085, 2003 WL 21054377 as the central appeal file. An administrative judge conducted hearings on the consolidated appeals on January 15–16, 2002. On April 1, 2003, the Board issued a separate opinion addressing the mowing and policing appeals, identifying the opinion by the original docket number, ASBCA No. 51388. In its opinion, the Board upheld Hamm's claim for an equita-

ble adjustment for additional mowing because the mowing acreages provided in the solicitation were understated by 9.656 acres weekly and Hamm was misled by this defect. *E.L. Hamm*, ASBCA No. 51388, slip op. at 12. The Board also found that the policing acreage in the contract specification was erroneous. *Id.* But the Board denied Hamm's claim for the value of additional policing work, finding that Hamm failed to show that it was misled by the understated policing acreage. In particular, the Board found that Hamm used the single mowing acreage of 166.77[1] acres to propose conducting policing 236 days per year. *Id.* Thus, because Hamm's policing proposal included only the mowing acres,[2] *id.* at 9, the Board found that Hamm failed to include any additional acreage for the streets, sidewalks, playground areas, parking lots, gutters, and alleys, *id.* at 13. Having relied on the single mowing acreage to calculate its policing bid, the Board found that Hamm was not actually misled by the defective policing acreage. *Id.*

Hamm timely filed an appeal on July 30, 2003. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## DISCUSSION

### I. STANDARD OF REVIEW

We review a Board decision by applying the standards of review set out in the Contract Disputes Act of 1978(CDA), 41 U.S.C. §§ 601–613. Under the CDA, the Board's conclusions of law are reviewed without deference. 41 U.S.C. § 609(b) (2000). The Board's findings of fact, however, shall not be set aside unless fraudulent, or arbitrary, or capricious, or so

grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence. *Id.* Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wickham Contracting Co., Inc. v. Fischer*, 12 F.3d 1574, 1577 (Fed.Cir.1994). The issue here is one of fact: whether Hamm was misled by the Navy's defective solicitation, which understated the policing acreage.

## II. ANALYSIS

We conclude that the Board's finding that Hamm was not misled by the defective specification is not supported by substantial evidence. Based on the evidence before the Board, it is clear that Hamm did not erroneously rely on the single mowing acreage in assembling its bid; Hamm instead relied on the understated policing figure. Moreover, the Navy's understatement of the policing acreage was not a patent defect. Consequently, Hamm may recover an equitable adjustment.

Whenever the government uses specifications in a contract, there is an accompanying implied warranty that these specifications are free from errors. *Robins Maint., Inc. v. United States*, 265 F.3d 1254, 1257 (Fed.Cir.2001) (citing *United States v. Spearin*, 248 U.S. 132, 137, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918)). In order to recover an equitable adjustment based upon an erroneous specification, a contractor must show that it was misled by the error in the specification. *Id.* Conversely, [w]here the contractor is not misled, it cannot claim an equita-

---

**1.** The Board found that Hamm mistakenly calculated the single mowing acreage to be 166.77 acres by using 25.52 acres for the Ben Moreel Housing Area rather than the 15 mowing acres stated in Attachment J–C17, a

10.52 acre discrepancy. *E.L. Hamm*, ASBCA No. 51388, slip. op. at 9.

**2.** The Board made this finding *sua sponte*, without the issue having been raised by either side.

ble adjustment. *Id.: see also Comtrol, Inc. v. United States,* 294 F.3d 1357 (Fed. Cir.2002) (There can be no recovery if there was no reliance.). Thus, a claimant is not entitled to recover when it was aware of a defect in the specification at the time of entering into a contract. *See Wickham Contracting Co., Inc. v. United States,* 212 Ct.Cl. 318, 546 F.2d 395, 401 (1976); *see also Robins Maint.,* 265 F.3d at 1258 (refusing to grant contractor an equitable adjustment because contractor submitted bid knowing that the acreage figures were understated). In addition, a claimant is eligible for an equitable adjustment only if it can show that its conduct in preparing its bid was reasonable. *Highway Prods., Inc. v. United States,* 208 Ct.Cl. 926, 530 F.2d 911, 919 (1976). As such, when a contractor is faced with an obvious omission, inconsistency or discrepancy of significance, he is obligated to bring the situation to the government's attention if he intends subsequently to resolve the issue in his own favor. *Space Corp. v. United States,* 200 Ct.Cl. 1, 470 F.2d 536, 538 (1972).

■ We summarize the above rules as follows: where a contractor-claimant seeks to recover an equitable adjustment for additional work performed on account of a defective specification, the contractor-claimant must show that it was misled by the defect. To demonstrate that it was misled, the contractor-claimant must show both that it relied on the defect and that the defect was not an obvious omission, inconsistency or discrepancy of significance—in other words, a patent defect—that would have made such reliance unreasonable.

Both Hamm and the Navy agree that this case involves a defective specification. They disagree, however, as to whether Hamm was misled thereby. Accordingly, in determining whether Hamm is eligible for an equitable adjustment, we must de-cide, first, whether the Board had substantial evidence to conclude that Hamm did not rely on the defective specification in submitting its policing bid, and second, whether Hamm was or should have been aware of the defect.

### A. Whether Hamm Relied on the Defective Specification

■ On appeal, Hamm contests the Board's finding that it was not misled by the defective specification, arguing that it relied on the government-provided policing acreage in submitting its bid. Specifically, Hamm notes, in calculating its bid using the Navy's Engineering Performance Standards (EPS), it used the given total acreages for the contract performance period and the EPS per acre staffing/pricing information. As such, Hamm claims it clearly *was* misled by the defective specification. Moreover, while Hamm admits that, at one point in its proposal, it relied on the single mowing acreage to assume only 166.77 acres of policing work, it contends that this assumption served only to arrive at an estimated daily staffing requirement. In particular, Hamm explains, because the solicitation required 39,427 acres of policing, it used the single mowing acreage to estimate that the solicitation called for 236 days per year of policing (39,427 acres per year / 166.77 acres per day = 236 days per year). According to Hamm, it therefore proposed policing only five days a week ((52 weeks × 5 days)—10 federal holidays = 251 days), a proposal that the Navy incorporated when it accepted Hamm's bid. But Hamm emphasizes that this estimate of staffing requirements using the single mowing acreage did not affect its policing bid, which was wholly based on EPS calculations using the annual policing figure.

In response, the Navy argues that the Board correctly determined that Hamm

failed to show it relied on the erroneous acreage figure when it prepared its proposal. Instead, the Navy argues, Hamm relied on two erroneous assumptions when it offered to police—according to the Board's findings—166.77 acres daily for 236 days per year. First, the Navy contends that Hamm proposed policing 166.77 acres daily by erroneously relying on the (miscalculated) single mowing acreage in assembling its bid. Given the requirements of section C.11 of the solicitation, which clearly notes that the daily acreage to be policed includes the single mowing acreage as well as additional acreage, the Navy insists that Hamm acted unreasonably. Second, in light of the solicitation's clear requirement in section C.13 for a six-day workweek, the Navy posits that Hamm made another unreasonable assumption when it estimated policing duties were only required 236 days a year. According to the Navy, because Hamm itself made mistaken and unreasonable assumptions, it cannot claim it was misled by the erroneous policing acreage in the specification.

We conclude that substantial evidence does not support the Board's finding that Hamm relied on the single mowing acreage in assembling its bid for policing work. As the Navy notes here, Hamm divided the yearly policing acreage (39,427) by the single mowing acreage (166.77) to estimate that the grounds required 236 days of policing. On the basis of this calculation, the Board erroneously concluded Hamm's proposal offered to police 166.77 acres daily for 236 days per year. *E.L. Hamm*, ASBCA No. 51388, slip op. at 9. This is not supported by substantial evidence. Based on its estimated calculations, wherein Hamm admittedly used the single mowing acreage, Hamm proposed to police the grounds daily Monday through Friday (251 annual policing days). Contrary to the Navy's arguments, this five-day workweek was fully incorporated into the contract.

It is clear that Hamm only used the single mowing acreage to arrive at a rough estimate of the daily staffing requirement, by which it then determined the appropriate workweek. This analysis in no way involved the calculation of the fixed-price bid for the policing work itself.

With respect to the relevant portion of its bid, Hamm in fact relied on the erroneous policing acreage from the specification. As borne out by the evidence below, Hamm used the Navy's EPS system to prepare its bid. First, Mr. Hamm testified before the Board that his company employed the Navy's EPS system to calculate its proposal, using the acreages provided by the government. In particular, as demonstrated in the portion of its proposal titled Staffing Grounds Maintenance Service Work, Hamm performed its EPS calculations using the understated policing value. In the subsection detailing the Stated Requirements in Direct Labor Hours, Hamm calculated the total hours for Policing of Grounds by multiplying the understated yearly policing acreage (39,-427) by the number of time hours per acre (0.233) to arrive at a total of 9186 hours per year of policing. Further, in determining the Proposed Grounds Maintenance Staff Expressed in Productive Hours, Hamm used this yearly hours total to derive the required number of annual policing staff, which ultimately led to the fixed-price bid for work including policing services.

Based on our analysis, we agree with Hamm that the Board did not have substantial evidence to support its finding that Hamm was not misled by the defective specification in calculating its bid with respect to policing. While Hamm did use the mowing acreage to estimate the appropriate workweek, it otherwise relied on the understated yearly policing acreage when calculating its policing bid.

## B. Whether the Specification Was Patently Defective

Having concluded that Hamm relied on the understated policing acreage figure, we must still determine whether Hamm was aware of or should have been aware of the defect such that it is not entitled to recover an equitable adjustment.[3]

The Navy contends that the annual policing acreage was a patent ambiguity and Hamm should not, therefore, be entitled to recover. In making this argument, the Navy primarily relies on the fact that the daily policing acreage was less than or equal to the single mowing acreage, which was contrary to section C.11 of the solicitation. This ambiguity would have been apparent to a reasonable person in the contractor's position, according to the Navy, based on the information available at the time of contracting. In particular, the Navy points out, Hamm could have calculated that the minimum annual policing acreage was at least 47,268 acres based on the correct single mowing acreage of 156 acres (156 acres × 303 days). As the Navy notes, this calculated minimum already exceeds the stated yearly policing acreage, in clear contravention of section C.11. Finally, the Navy argues that it would have been obvious from the PWC drawings that Hamm's proposal to police 166.77 acres per day underestimated the policing requirements. Thus, the Navy asks us to find a patent ambiguity and, because Hamm failed to inquire, to preclude Hamm from recovering an equitable adjustment.

Hamm disagrees, arguing that the understated policing acreage was not a patent ambiguity. First, Hamm notes, the specification was not patently defective because the line items seemed reasonable on their face. According to Hamm, the 4137 acres of mowing for the ten-month period (3959 acres of general mowing + 178 acres of prestige mowing) were significantly lower than the 32,856 acres of policing for the same time period, such that no patent ambiguity could be facially discerned. Second, Hamm contends that the fact that the single mowing and daily policing acreages were the same was not patent; arriving at this information required reverse engineering the total contract-period acreages for mowing and policing, which itself involved a series of complicated calculations using figures from various sections of the specification. Thus, Hamm concludes, [t]he fact that these acreages are, according to the Board, "deducible" by performing obtuse calculations and integrating various sections of the Contract did not obligate Hamm to verify a clear and—on its face—reasonable Contract specification. Appellant's Reply Br. 8. In arriving at this conclusion, Hamm relies on *C.L. Michner v. United States,* 26 Cont.Cas.Fed. (CCH) ¶ 83,111 (Ct.Cl.1979), *available at* 1979 WL 16464 (Ct.Cl. Trial Div.), *aff'd,* 220 Ct.Cl. 641, 618 F.2d 121 (1979), to argue that bidders may rightfully rely on government-supplied estimates even if measurements of scaled PWC drawings would have revealed the acreage differences, as long as the bidder acted reasonably.

■ We begin by noting that both the Navy and Hamm mistakenly argue over the existence of an ambiguity. At issue in this case is the existence of a defect, not an ambiguity. *See Highway Prods.,* 530 F.2d at 922 (distinguishing defects in a specification from ambiguities in contract provisions).

■ An ambiguity exists when a contract is susceptible to more than one reasonable interpretation. *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751

---

3. The Board did not reach the latent/patent issue in its decision, having already concluded that Hamm did not rely on the understated policing acreage in calculating its bid.

(Fed.Cir.1999). If an ambiguity exists, the next question is whether that ambiguity is patent. *Id.* The doctrine of patent ambiguity is an exception to the general rule of *contra proferentem*, which courts use to construe ambiguities against the drafter. *Id.* If, however, the ambiguity is latent, the general rule applies. *Id.*

There is no ambiguity here. Hamm and the Navy do not both present reasonable interpretations of a contract term such that we could find an ambiguity. The contract term at issue here, the policing acreage, is not a term that is susceptible to two different interpretations under the terms of the contract. Notably, because Hamm could rely on the Navy's specification in computing its bid, the existence of drawings from which Hamm could have calculated the correct policing acreage does not create two differing contract terms and, consequently, an ambiguity.

▮▮▮ Rather than dealing with an ambiguous specification and whether that ambiguity is latent or patent, we are dealing here with a defective specification and whether that defect is latent or patent. Nevertheless, there are similarities in the law. A contractor may not recover for a patent ambiguity, but may recover for a latent ambiguity. *See Metric Constructors,* 169 F.3d at 751. Similarly, a contractor may not recover for a patent defect, but may—implicitly—recover for a latent defect. *See Highway Prods.,* 530 F.2d at 921. In other words, just as a contractor may recover for a latent ambiguity, a contractor may recover for a latent defect; just as a contractor may not recover for a patent ambiguity, a contractor may not recover for a patent defect. Given these similarities, we will treat the parties' arguments as though they relied on the proper body of law, taking the Navy to argue in favor of finding a patent defect and Hamm as arguing in favor of finding a latent defect.

▮▮▮ We conclude that the defect at issue here was latent. Hamm correctly notes that a facial inspection of the mowing and policing figures in the solicitation does not reveal any glaring or obvious discrepancy. The policing figure is significantly larger than the mowing figure, as expected given the additional area to be policed and the additional days requiring policing work (mowing is required once a week; policing once a day). This, in contrast to the Navy's argument, makes it far from obvious from looking at either the numbers or the drawings that the policing acreage was understated. Moreover, we are not convinced by the Navy's argument that, had Hamm used the single mowing acreage, Hamm would have noticed the minimum annual policing acreage was too high—at least 47,268 acres (156 acres × 303 days). The Navy incorrectly uses a six-day workweek in its calculations. As discussed, Hamm's bid, which was fully incorporated into the contract, provided for policing only five days a week. As such, using the single mowing acreage, the minimum yearly policing acreage would have calculated to at least 39,156 acres (156 acres × 251 days). While not much less than the annual policing acreage listed in the specification, 39,427 acres (32,856 acres/10 months × 12 months), we conclude that this does not demonstrate a patent defect. After all, as is proper under section C.11, the minimum annual policing acreage as calculated using the single mowing acreage is less than the annual policing acreage listed in the solicitation.

As a corollary to the analysis in the preceding paragraph, we agree with Hamm that the fact that the daily mowing and policing acreages were the same was not a patent defect. While the Board seems to have found this discrepancy dispositive in denying Hamm an equitable adjustment, we disagree. As Hamm

points out, there are a number of steps necessary to reverse engineer the figures in the solicitation to arrive at a daily policing acreage for comparison with the single mowing acreage. In addition, this process involves using information from various different parts in the contract. More importantly, though, there is nothing in the contract or bidding process that requires or suggests performing these calculations. As discussed above, Hamm prepared its bid using the yearly figures given by the Navy, applying the Navy's EPS system to calculate the estimated costs for mowing and policing. This process does not rely on daily values but, rather, yearly values. Without reason to reverse engineer the mowing and policing figures, Hamm did not discover any discrepancy in calculating its bid. Hamm had no reason to calculate daily mowing and policing acreages under the EPS system; therefore, the defect was not, as the Navy suggests, patently obvious.

Given the Navy's implied warranty behind the figures in its solicitation, we conclude that Hamm rightfully used these figures to compute its bid. Any discrepancy was hidden within the contract documents and therefore latent. Without any reason to reverse engineer the daily mowing and policing acreages or, conversely, to calculate a minimum yearly total for policing using the single mowing acreage, Hamm had no reason to discern the error. Once Hamm's difficulty in keeping up with the policing work revealed the error in the solicitation, it properly had an expert use the drawings attached to the contract to submit a claim for an equitable adjustment. But it did not initially have a duty to prepare take-offs from these drawings because of the implied warranty behind the figures given in the Navy's solicitation. Because the numbers here did not reveal a glaring facial discrepancy such that Hamm would have had a duty to inquire into them at the outset, we conclude that the under-statement of the yearly policing figure was a latent, not patent, defect.

## C. Remedy

■ We have concluded both that Hamm relied on the defective specification and that the defect was not patent. As such, Hamm was misled by the specification and can recover an equitable adjustment. The question remains, however, how much Hamm should recover for its additional work.

The Navy argues that Hamm has not proven that it actually performed the work for which it is claiming compensation, and is not, therefore, entitled to any adjustment under principles of equity. In particular, the Navy points to the DCAA audit that it claims reveals Hamm was paid more for the policing work performed than it billed for that work. In addition, the Navy contends, because Hamm did not bill all of its claimed policing work to the specific policing charge number, it cannot demonstrate that it actually performed the work for which it is seeking compensation, and cannot recover any amount in equitable compensation.

In response, Hamm argues that the issue of damages is a matter properly left to a quantum hearing. First, Hamm notes, it would have been paid more for its policing work than it paid its subcontractor; the subcontractor only performed policing services for seven of the twenty-seven months of the contract, and even then Hamm employees augmented the policing services. Second, Hamm also points out that, given the fixed-price nature of the contract, it is to be expected that Hamm would be paid more than it costs to perform the work, such that Hamm can expect to profit from the contract. As such, Hamm asserts, the fact that it may have been paid more for policing than it billed has no bearing on its equitable entitlement. According to Hamm, it should be paid for the value of

added work, priced at the unit cost stated in the contract.

We agree with Hamm that the issue of damages is properly left to a quantum hearing. We cannot reach any conclusion as to the proper amount of damages given the limited record before us. The case was resolved at the Board by a finding that Hamm was not entitled to compensation because it was not misled by the defective specification. Thus, the Board did not conduct any fact-finding regarding the amount of equitable entitlement to which Hamm may have otherwise been entitled. Moreover, we are not convinced by the Navy's argument that Hamm is not entitled to any equitable recovery because it was paid more than it billed for policing work. The fixed-price nature of the contract, as Hamm points out, calls into question the Navy's logic. We therefore remand for a quantum hearing, which should take into account the unit cost of policing work and the additional land policed, adjusting for whether and to what degree Hamm can demonstrate that it performed this additional work.

### III. CONCLUSION

We conclude that the Board's finding that Hamm was not misled by the Navy's defective specification was not supported by substantial evidence. Hamm reasonably relied on the defective specification, which did not contain a patent defect that might preclude it from recovering an equitable adjustment. We therefore remand to the Board for a quantum hearing to determine Hamm's equitable entitlement.

### COSTS

No costs.

REVERSED and REMANDED.