## ROY CASE CONSTRUCTION COMPANY, Appellant,

v.

## Thomas E. WHITE, Secretary of the Army, Appellee.

No. 02–1316.

United States Court of Appeals, Federal Circuit.

DECIDED: Nov. 18, 2002.

Before NEWMAN, LOURIE, and PROST, Circuit Judges.

PROST, Circuit Judge.

Roy Case Construction Company ("RCCC") appeals from the final decision of the Armed Services Board of Contract Appeals ("Board") denying RCCC's claim for an equitable adjustment, a time extension, and costs associated with RCCC's performance of its contract with the United States Army Corps of Engineers ("Government" or "Corps"). *Roy Case Constr. Co.,* ASBCA Nos. 52898, 52899, slip op. 1, 2001 WL 1562271 (Dec. 3, 2001) (*"Case Constr. Co."*). Because RCCC has not shown that the Board misconstrued the contract or that the Board's decision was not supported by substantial evidence, we *affirm.*

I.

On January 1, 1993, the Government issued an Invitation for Bids ("solicitation") on a contract for the fabrication and installation of a spillway closure structure.

*Id.* This spillway closure, part of a monorail and bulkhead system, was to be built of approximately one hundred and eighty tons of structural steel. *Id.* As originally issued, the solicitation provided, *inter alia:*

3.1 FABRICATION:

Fabrication requirements shall be as shown on the drawings and specified herein and in Section 05501. METAL WORK FABRICATION, MACHINE WORK, AND MISCELLANEOUS PROVISIONS. Components shall be shop-fabricated of the materials shown on the drawings and shall be free of twists, kinks, bends, rough spots, projections, or other deformations. Splices shall occur only where approved by the Contracting Officer. Dimensional tolerances shall be as specified and shown on the drawings. Ultrasonic examination is required on the groove welds around the pipes in the linkages.

*Id.* at 2. On March 1, 1993, the Government issued Amendment 0005, which modified the solicitation by adding the sentence, "The fabricating plant shall be qualified under the AISC quality certification program for Category II structural steel work," at the end of the above-quoted language. *Id.*

RCCC interpreted the modified solicitation to require that only the linkages be fabricated in an AISC-certified plant. *Id.* Because the linkages comprised only approximately three of the one hundred and eighty tons of steel required under the contract, RCCC therefore believed that the contract permitted the great majority of steel fabrication to be performed in an uncertified facility. *Id.*

The Government opened bids on April 20, 1993. *Id.* at 3. After receiving RCCC's bid, which was sixteen percent below the next lowest bid and thirteen percent below the Government's estimate, the Government faxed a letter to RCCC on May 18, 1993, asking that it verify its bid by May 25, 1993. *Id.* Additionally, a Corps contract specialist, Naomi Hayden, telephoned RCCC's president, Mr. Roy Case, to confirm that RCCC had received the Government's fax. *Id.* In speaking with Ms. Hayden, Mr. Case informed her that RCCC was not an AISC-certified fabricator and that the company had interpreted Amendment 0005 to require that only the linkages be fabricated in a certified facility. *Id.* Ms. Hayden advised Mr. Case that she believed that the AISC requirement was not confined to the linkages and instead applied to all steel fabrication under the contract. *Id.*

On May 18, 1993, Mr. Case visited the Corps offices and spoke with Ms. Hayden and Ms. Hayden's supervisor, Virginia Moore, the chief of the Corps' A–E & Construction Branch. *Id.* During this conversation, Mr. Case conceded that his interpretation of the solicitation was a "stupid mistake." *Id.* At this point, Ms. Hayden called the Corps engineer who had prepared Amendment 0005, Tony Batey, to confirm that the amendment's AISC requirement applied to all steel fabrication rather than to just the linkages. Mr. Batey confirmed this interpretation, and his confirmation was passed along to Mr. Case.

On May 24, 1993, Mr. Case sent the Government a letter stating that he had not found any mathematical mistakes in his bid but that he had "misinterpreted" Amendment 0005's certification requirement by determining that it applied only to the linkages. In his letter, Mr. Case attributed this "misunderstanding" to his own "honest error." *Id.* While the letter requested that the Government "consider reimbursing" Mr. Case for the extra costs allegedly associated with this error, it did not give any precise cost estimates. Moreover, Mr. Case's letter informed the Gov-

ernment that RCCC was "very eager and willing to do the job." *Id.*

After receiving the letter, the Government made numerous attempts to reach Mr. Case. *Id.* On June 8, 1993, Mr. Case finally contacted Ms. Moore, asserting that he wanted "his objection on record" that under his interpretation of the solicitation, it required that only the linkages be fabricated in an AISC-approved plant. Mr. Case conceded, however, that he had been "overruled" on this point and that the Government had not agreed with his proposed interpretation. *Id.*

On June 8, 1993, the contracting officer ("CO") sent RCCC a letter notifying it that unless RCCC submitted evidence of a claimed mistake in the its bid by June 14, 1993, "the bid [would] be considered as submitted," and RCCC would be "required to perform as bid and in accordance with the terms and conditions of the contract." *Id.* at 4–5. RCCC did not respond to this final warning, and on June 17, 1993, the Government awarded RCCC the contract. *Id.* at 5. On August 20, 1993, RCCC submitted an application to AISC for Category II certification, stating, "I am under contract with the Army Corps of Engineers for a fabrication job that requires category II classification. No work can be done on this project until my shop is approved." *Id.*

On September 21, 1993, the CO notified RCCC that the Government was considering terminating its contract for default for lack of progress. *Id.* Mr. Case replied by letter on September 30, 1993, restating RCCC's interpretation that the AISC requirement applied uniquely to linkage fabrication and asking that the Government clarify its interpretation in writing. *Id.* at 6. The CO responded by letter on October 28, 1993, again threatening to terminate RCCC's contract for default. In this letter, the CO reiterated that AISC certifica-

tion was required for all steel fabrication, and she emphasized that the Government had notified RCCC of the requirement's applicability before awarding the company the contract. *Id.* RCCC obtained AISC certification effective November 24, 1993, and it substantially completed the contract on November 14, 1994. *Id.*

Almost five years later, on August 23, 1999, RCCC submitted an omnibus claim consisting of numerous subclaims, two of which are relevant to this appeal. *Id.* Subclaim 4 sought an equitable adjustment of $175,641 and a 161–day time extension allegedly associated with RCCC's acquisition and maintenance of the AISC certification and related delays. *Id.* Subclaim 5 sought $204,050 for the allegedly increased cost of fabrication in an AISC-certified facility. *Id.* The CO denied RCCC's claim in its entirely on March 6, 2000, and RCCC appealed subclaims 4 and 5 to the Board. *Id.*

On appeal, RCCC made two arguments. First, it contended that it had reasonably interpreted the contract to require that only the linkages be fabricated in an AISC-certified facility. Second, it asserted that although the Government had known of RCCC's interpretation before awarding the company the contract, the Government had improperly failed to clarify its own, allegedly unreasonable, interpretation in writing before making the award. *Id.* at 7. The Board rejected both of these arguments. With respect to RCCC's first contention, the Board concluded that nothing in Amendment 0005 could reasonably be construed as limiting the AISC requirement to the linkages. *Id.* Moreover, the Board found that prior to being awarded the contract, Mr. Case himself had admitted that he had misread the certification requirement, explicitly characterizing this misreading as a "misinterpretation," a "misunderstanding," an "honest

error," and, most bluntly, a "stupid mistake." *Id.* The Board determined that at this point, Mr. Case had both acquiesced to the Government's interpretation and conceded the unreasonableness of his own pre-bid interpretation. *Id.* The Board also found that even assuming *arguendo* that the AISC requirement was ambiguous, this ambiguity was patent and the burden consequently fell upon RCCC to seek clarification before bidding. *Id.* at 8.

The Board also rejected RCCC's second argument that Mr. Case had never agreed to the Government's interpretation of the AISC requirement, characterizing this assertion as "simply not correct." *Id.* The Board further dismissed RCCC's assertion that the Government should have stated its interpretation in writing, concluding that "[t]here was no possible confusion as to the Government's position," and that it was RCCC that "remained silent, not willing to insist firmly on any interpretation that might threaten its award of the contract." *Id.* at 9. The Board consequently denied RCCC's appeals. *Id.* at 1. RCCC appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## II.

Our review of the Board's decision is governed by the Contract Disputes Act ("CDA"), 41 U.S.C. § 609(b). Under the CDA, the Board's findings of fact are final and conclusive, and we consequently will not disturb them unless they are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if [they are] not supported by substantial evidence." *Id.; see also Boeing N. Am., Inc. v. Roche,* 298 F.3d 1274, 1280 (Fed.Cir.2002). We review the Board's legal determinations, such as contract interpretation, without deference, although we accord the Board's interpretation of a contract careful consideration and

great respect. *See Coyle's Pest Control, Inc. v. Cuomo,* 154 Fed.3d 1302, 1304 (Fed. Cir.1998) (citing *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed. Cir.1985)).

Before this court, RCCC makes two arguments. First, it asserts that the Board erred when it determined that Amendment 0005 created no ambiguity in the contract or that if it did, that ambiguity was patent. According to RCCC, Amendment 0005 created a latent ambiguity that, because RCCC's interpretation of the contract was reasonable, should be construed against the Government. As the Government correctly responds, however, the solicitation provision at issue simply was not ambiguous. That provision stated, in pertinent part, that "[u]ltrasonic examination is required on the groove welds around the pipes in the linkages. The fabricating plant shall be qualified under the AISC quality certification program for Category II structural steel work." *Case Constr. Co.,* slip op. at 2. Nothing in this language suggests that the AISC certification requirement was limited to the linkages. While the sentence setting forth the certification requirement did follow the sentence concerning the linkages, such organizational proximity in the context of a general paragraph is not sufficient to create the ambiguity that RCCC now alleges. This is particularly true given Mr. Case's own pre-award admission that the interpretation RCCC now presents as reasonable in fact constituted a "misinterpretation" and a "stupid mistake." *Id.* at 7. Although RCCC is clearly correct in its assertion that it, "as a contractor, can't be clairvoyant," Mr. Case's own statements reveal that this was not the standard required here. Substantial evidence supports the Board's determination that the contested contract provision was not ambiguous, and we consequently affirm its

denial of RCCC's appeals. *See Hunt Constr. Group, Inc. v. United States,* 281 F.3d 1369, 1373 (Fed.Cir.2002) ("When the contract language is unambiguous on its fact, our inquiry ends, and the plain language of the contract controls." (citing *Textron Def. Sys. v. Widnall,* 143 F.3d 1465, 1469 (Fed.Cir.1998))).

We also reject RCCC's argument that the Board's denial of its appeals constituted reversible error because the Government failed to adequately apprise RCCC of the Corps' interpretation of the solicitation prior to contract award. As the Board explicitly found, Ms. Moore made it clear to Mr. Case before the contract was awarded that the certification requirement applied to all steel fabrication, *Case Constr. Co.,* slip op. at 4, and Mr. Case himself admitted that his reading of the contract amounted to a "misinterpretation" and a "stupid mistake," *id.* at 7. RCCC does not challenge these findings on appeal, and we conclude that substantial evidence supported the Board's determination that "[t]here was no possible confusion as to the Government's position." *Id.* at 9. We therefore affirm the Board's denial of RCCC's appeals. *Cf. Robins Maint., Inc. v. United States,* 265 F.3d 1254, 1257 (Fed. Cir.2001) ("Where the contractor is not misled, it cannot claim an equitable adjustment.").