ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| General Dynamics - National Steel and Shipbuilding Company | ) ASBCA No. 61524 |
| | ) |
| Under Contract No. N00024-17-C-4426 | ) |

APPEARANCE FOR THE APPELLANT:     William M. Pannier. Esq.
                                  Pannier Law, PC
                                  Thousand Oaks, CA

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
                                  Navy Chief Trial Attorney
                                  Brian S. Smith, Esq.
                                  Senior Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE SWEET
## ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

This appeal involves a contract for appellant General Dynamics - National Steel and Shipbuilding Company (NASSCO) to provide Drydocking Phased Maintenance Availability repairs and alterations onboard USS *Makin Island* (LHD 08). The contract was a fixed-price contract for NASSCO to accomplish defined work items. However, it also provided for growth work—work that the government might assign in addition to the defined work, which NASSCO committed to perform at a fixed-labor rate and material-burden percentage. The issue in this appeal is whether certain disputed clauses that required reservations of labor and material were for growth work.

NASSCO moves for summary judgment, arguing that the disputed clauses unambiguously were pre-priced reservations that capped the defined work, such that it is entitled to an equitable adjustment for any work in excess of the reservations' labor mandays and material costs. The government cross-moves for summary judgment, arguing that the disputed clauses unambiguously were reservations for growth work above and beyond the defined work, such that NASSCO must perform all of the defined work for the fixed price, even if it exceeds the reservations' labor mandays and material costs. We deny both motions because we find that the language of the disputed clauses is ambiguous—and therefore that it is necessary to resort to extrinsic evidence, which raises a genuine issue of material fact.

1. On June 6, 2017, the United States Naval Sea Systems Command (government) awarded Contract No. N00024-17-C-4426 (4426 contract) to NASSCO (R4, tab 1 at 1338). The 4426 contract required NASSCO to:

> [P]repare for and accomplish repair and alterations during the DryDocking Phased Maintenance Availability (DPMA) onboard USS MAKIN ISLAND (LHD 08) as specified in the statement of work provided herein and in accordance with standard items, work item specification package SSP TPPC-LHD8-SWRMC17-CN01 drawings, test procedures, and other detailed data as included in Attachments J-1 and J-2. See Notes A and C.

(R4, tab 1 at 1339; app. supp. R4, tab 1 at 1-5)

2. The 4426 contract generally was a fixed-price contract (R4, tab 1 at 2-11, 14). However, NASSCO also committed in Notes A and C to provide reservations of labor and material at a fixed rate for "growth" work. Growth work was tasks that the government might assign in the future in addition to the defined work. (*Id.* at 1357-59)

3. The 4426 contract contained numerous Work Items (R4, tab 1 at 187-1568), which were individual sets of work requirements to accomplish a specific alteration or repair. Joint Fleet Maintenance Manual (JFMM), VII-4E-6, § II(A), *available at* https://www.navsea.navy.mil/Portals/103/Documents/SSRAC/4E/FY20/10%2026%20FY 20%20Apendex%204E%20JFMM%2001OCT2018.pdf?ver=2018 10-26-103938-110. In particular, Work Items 311-21-001, 311-22-001, 311-23-002, 311-24-011, 311-25-001, and 311-26-003 (Work Items 21 through 26) addressed Ship Service Diesel Generators (SSDGs) Numbers 1 through 6, D level, respectively (R4, tab 1 at 1418-1568).

4. Paragraph 3 of each Work Item contained the requirements (R4, tab 1 at 1418-1568); *see also* JFMM, § VII(B)(4). The first several subparagraphs of paragraph 3 (Defined Work Clauses)[1] required NASSCO to accomplish specifically enumerated tasks (defined work) (R4, tab 1 at 1418-1568). Then, paragraph 3 contained a subparagraph mandating a reservation of labor mandays and material costs (Reservation Clauses). In particular, subparagraphs 3.5 of Work Items 21, 23, and 26, and subparagraph 3.4 of Work Item 22 (Disputed Reservation Clauses) stated,

---

[1] The Defined Work Clauses were subparagraphs 3.1 through 3.3 of Work Items 22, 24, and 25; and subparagraphs 3.1 through 3.4 of Work Items 21, 23, and 26 (R4, tab 1 at 1418-1568).

"[p]rovide 60 mandays of labor and 16,000 dollars of material to accomplish this Work Item, as designated by the SUPERVISOR." (*Id.* at 1419, 1431, 1451, 1558) Subparagraph 3.4 of Work Items 24 and 25 (Undisputed Reservation Clauses) stated, "[p]rovide 100 mandays of labor and 50,000 dollars of material to accomplish additional work not already covered by this Work Item, as designated by the SUPERVISOR" (*id.* at 1463, 1510).

5. Other reservation clauses in other Work Items (Other Reservation Clauses) created a growth reservation of mandays and material to correct deficiencies identified during inspections and tests (R4, tab 1 at 469-70, 504-05, 942, 1175, 1218-19).

6. On September 11, 2017, NASSCO submitted a request for an equitable adjustment (REA), claiming that it was entitled to an equitable adjustment for any work on Work Items 21 through 23 and 26 (Disputed Work Items) requiring more than 60 labor mandays or $16,000 of materials (app. supp. R4, tab 3 at 71-126).

7. The government rejected NASSCO's REA on October 3, 2017 (R4, tab 3 at 1661).

8. On December 1, 2017, NASSCO filed a certified claim (R4, tab 2).

9. Based upon a deemed denial of that claim, this appeal followed.

## DECISION

### I.    The Standard for Summary Judgment

We grant summary judgment if a moving party has shown that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.* Summary judgment based upon an issue of contract interpretation may not be granted if there is an ambiguity requiring that we resort to extrinsic evidence over which there is a genuine dispute. *Classic Site Solutions, Inc.*, ASBCA Nos. 58376, 58573, 14-1 BCA ¶ 35,647 at 174,551.

### II.    Neither Party is Entitled to Summary Judgment Because the Language of the Disputed Reservation Clauses is Ambiguous and we Must Resort to Contested Extrinsic Evidence

Neither party is entitled to judgment as a matter of law because the language of the Disputed Reservation Clauses is ambiguous, and therefore we must resort to extrinsic evidence, which raises genuine issues of material fact. "[C]lear and

3

unambiguous [contract provisions] must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (en banc) (citations and internal quotation marks omitted). "An ambiguity exists when a contract is susceptible to more than one reasonable interpretation." *E.L. Hamm & Assoc., Inc. v. England*, 379 F.3d 1334, 1341 (Fed. Cir. 2004). "To show an ambiguity it is not enough that the parties differ in their respective interpretations of a contract term. Rather, both interpretations must fall within a 'zone of reasonableness.'" *NVT Tech., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (quoting *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1989). As we have held:

> Determining whether...differing interpretations are
> reasonable begins with an examination of the plain
> language of the contract, construing the contract so as to
> effectuate its spirit and purpose giving reasonable meaning
> to all parts of the contract. In order to fall within the zone
> of reasonableness, a party's interpretation must be
> logically consistent with the contract and the parties'
> objectively ascertainable intentions.

*ECCI-C Metag, JV*, ASBCA No. 59031, 15-1 BCA ¶ 36,145 at 176,418 (citations and quotations omitted). "[T]he language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965).

If a contract is ambiguous, we may resort to extrinsic evidence to determine the parties' intent. *Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988). Such evidence typically consists of evidence regarding discussions and concurrent actions, the prior course of dealing between the parties, or custom and trade usage. John Cibinic, Jr., James F. Nagle & Ralph C. Nash, ADMINISTRATION OF GOVERNMENT CONTRACTS, 177 (5th ed. 2016).

Here, NASSCO interprets the Disputed Reservation Clauses as being pre-priced reservations that capped the Defined Work in each Work Item (app. mot. at 1, 6, 10; app. reply br. at 2-3).[2] The government interprets the Disputed Reservations Clauses as being growth reservations (pools), which NASSCO may have to provide in addition

---

[2] The term "pre-priced reservation" does not appear in the 4426 contract (R4, tab 1). Rather, NASSCO derives that term from JFMM, vol. VII, app'x B, B-3 (app. reply br. at 3). While NASSCO does not define that term, we understand NASSCO to mean a reservation that caps the defined work (app. mot. at 1, 6, 10; app. reply br. at 3).

to the defined work (gov't mot. at 2). Because both parties' interpretations of the Disputed Reservation Clauses fall within the zone of reasonableness, the language of the Disputed Reservation Clauses is ambiguous.

The Disputed Reservation Clauses state, "[p]rovide 60 mandays of labor and 16,000 dollars of material to accomplish this Work Item, as designated by the SUPERVISOR" (SOF ¶ 4). That language does not spell out the relationship between the Disputed Reservation Clauses and the Defined Work Clauses by specifying whether the reservations are in addition to, or cap, the defined work. For example, the Disputed Reservation Clauses clearly would be growth reservations if they stated, "[p]rovide *an additional* 60 mandays of labor and 16,000 dollars of material to accomplish this Work Item." Conversely, the Disputed Reservation Clauses clearly would not have been growth reservations if they had stated, "[p]rovide 60 mandays of labor and 16,000 dollars of material to accomplish *the work in sub-sections 3.1 through 3.4 [or 3.3]*." However, because the language of the Disputed Reservation Clauses does not specify the relationship with the Defined Work Clauses, it is ambiguous.

Nor does the "to accomplish this Work Item" language provide such specificity. The "to accomplish this Work Item" language does not indicate that the reservations are to accomplish the defined work. Rather, it merely states that the purpose of the reservations is to accomplish the particular Work Items. It does not indicate whether the reservations are all that NASSCO has to provide to accomplish the Work Items, or whether the reservations are in addition to the defined work that NASSCO has to provide to accomplish the Work Items.

Moreover, the comparison with the Undisputed Reservation Clauses and Other Reservation Clauses only serves to highlight the ambiguity in the Disputed Reservation Clauses (app. mot. at 13-14). On the one hand, the use of different language by the Undisputed Reservation Clauses ("additional work not already covered by this Work Item") and the Disputed Reservation Clauses ("this Work Item") suggests that the two sets of clauses are different types of reservations (SOF ¶ 4). On the other hand, the similarity in the structure of the Undisputed Work Items, the Disputed Work Items, and the Other Work Items—namely that several subparagraphs first require defined work, and then a separate subparagraph creates a reservation—suggests that all the reservations serve the similar purpose of providing for growth work (SOF ¶¶ 4-5). Thus, comparing the Disputed Reservation Clauses to other clauses does not resolve the ambiguity in the language of the Disputed Reservation Clauses.

5

As a result, we must resort to extrinsic evidence to determine the parties' intent.[3] *Beta Sys.*, 838 F.2d at 1183. NASSCO argues that its price workbook and contemporaneous government statements show that the Disputed Reservation Clauses capped the defined work (app. br. at 14-27). However, that raises genuine issues of material fact, which we cannot resolve in deciding these cross-motions. *See Classic Site Solutions*, 14-1 BCA ¶ 35,647 at 174,551 (citing *Dixie Construction Co.*, ASBCA No. 56880 10-1 BCA ¶ 34,422 at 169,918 ("Legal questions of contract interpretation are amenable to summary resolution, unless there is an ambiguity that requires the weighing of extrinsic evidence"). There also are other genuine issues of material fact, such as those regarding whether a reasonably intelligent contractor in NASSCO's position would have understood the Disputed Reservation Clauses to be pre-priced or growth reservations in light of the defined work's specificity, the size of the reservations relative to the scope of the defined work, and the "as designated by the SUPERVISOR" language.

## CONCLUSION

For the reasons discussed above, the parties' motions for summary judgment are denied.

Dated: March 25, 2019

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[3] Because we must resolve the factual issue of whether extrinsic evidence demonstrates the parties' intent before determining whether any ambiguity is latent or patent, we do not address the parties' arguments about whether any ambiguity is patent or latent.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61524, Appeal of General Dynamics – National Steel and Shipbuilding Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals