# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| BRDC, a Joint Venture | )   ASBCA Nos. 60130, 60668, 61611 |
| | ) |
| Under Contract No. N69450-10-C-1262 | ) |

APPEARANCE FOR THE APPELLANT:   Michael T. Ambroso, Esq.
                                                                DCK Worldwide, LLC
                                                                Pittsburgh, PA

APPEARANCES FOR THE GOVERNMENT:   Craig D. Jensen, Esq.
                                                                         Navy Chief Trial Attorney
                                                                         Matthew D. Bordelon, Esq.
                                                                         Russell A. Shultis, Esq.
                                                                         Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

In this construction matter, appellant seeks additional compensation for concrete, aggregates, and concrete testing, and for sand for masonry and stucco. The parties decided to submit this case on the record pursuant to Board Rule 11. Only entitlement is before us.

## FINDINGS OF FACT

Appellant is a joint venture consisting of DCK Worldwide, LLC, and Burns and Roe Services Corporation (BRSC) (R4, tab 73.2 at 7061-62). On June 3, 2010, the government contracted with appellant for the construction of family housing units, and the renovation of a fitness center, at Naval Base Guantanamo Bay (GTMO), and to begin work within 10 calendar days after receiving the award (rev. R4, tab 6 at 109-91, 1096).

In June 2009, prior to contract award, the solicitation provided, by way of Amendment 0013:

> The following clarification is provided regarding the
> pricing of concrete for this project:
>
> The Government cannot guarantee the pricing of concrete,
> aggregate or concrete testing at Guantanamo Bay after
> 30 November 2010 when the contract pricing under

BRSC's existing contract expires. *Offeror's* [sic] *should do their best to realistically estimate what this cost may be after 1 December 2010* [emphasis added].

The successful offeror will be required to purchase concrete, aggregate and concrete testing services from the follow on supplier after 1 December 2010. The Government does guarantee that the price provided to the successful offeror will be no more than the best price available to the Government under the successor contract which will replace this contract in December of 2010.

The successful Contractor will be allowed to request an equitable adjustment to the contract after award to adjust their price if the price for concrete, aggregate and concrete testing varies more than 10% as of 1 December 2010 from the estimated price. This adjustment may be an increase if the price for these commodities in the Government's contract goes up, or a reduction in price if the Government's price is less. An adjustment will only be made if the Government's price varies more than 10% in either direction (up or down) from the Contractor's estimated price. The Contractor will be required to substantiate (provide supporting documentation) their request for adjustment.

(Rev. R4, tab 3 at 2270-71) (secondary emphasis omitted)

Section 1.3.23 of the contract, Concrete Batch Plant, provides:

A concrete batch plant is located on Naval Base Guantanamo Bay [GTMO]. Up to 5,000 cubic yards of concrete can be purchased for specific projects at GTMO....

The government cannot guarantee the pricing of the concrete, aggregate or concrete testing at Guantanamo Bay after 30 November 2010 when the contract pricing under BRSC's existing contract expires. Offeror's [sic] will be required to purchase concrete, aggregate and concrete testing services from the follow on supplier after 1 December 2010. The Government does guarantee that the price provided to the successful offeror will be no more

2

than the best price available to the Government under the successor contract which will replace this contract in December of 2010.

The successful Contractor will be allowed to request an equitable adjustment to the contract after award to adjust their price *if the price for concrete, aggregate and concrete testing varies more than 10%* as of 1 December 2010 from the estimated price. This adjustment may be an increase if the price for these commodities in the Government's Contract goes up or a reduction in price if the Government's price is less. *An adjustment will only be made if the Government's price varies more than 10% in either direction (up or down) from Contractor's estimate price.* The Contractor will be required to substantiate (provide supporting documentation) their request for adjustment.

(R4, tab 56 at 4475) (emphasis added)

The contract also provided, at section 1.3.4.1, Availability and Cost of Government Materials and Services:

...The cost of Government materials, equipment, and services reflected in this specification are subject to fluctuation, revision, and adjustment.... [S]hould the actual rate required to be paid by the Contractor vary by more than 15 percent from that specified, *the contract price will be adjusted to reflect the amount by which the rate actually paid varies by more than 15 percent from that specified.*

(*Id.* at 4467) (emphasis added)  Finally, in January 2010, prior to awarding the contract, the government answered this way to a bidder's question:

Question RFI 0017-14: Previously, Amendment 0008 had a price listing titled Attachment J-1, Exhibit Line Item Numbers. Does this still apply? Does it need to be reissued? Please advise.

Answer RFI 0017-14: The proposer shall use the J-1 provided in amendment 0017.

3

(Rev. R4, tab 3 at 2121, 2125) Attachment J-1 to Amendment 0017 lists prices for concrete, aggregate, and concrete testing (R4, tab 3 at 2121, 2152-53). Appellant relied upon and incorporated the Attachment J-1 unit prices to calculate its anticipated costs for concrete, aggregates, and testing (app. R4, supp. A-1 at 3 ¶ 10 & attachs. 5, 7; A-2 at 3 ¶ 11 & attachs. 5, 7; gov't br. at 9). BRSC held the contract to operate the concrete batch plant at GTMO from December 1, 2005 through November 30, 2010 (R4, tab 76 at 2966-75). On December 1, 2010, Burns and Roe Enterprises, Inc., was awarded the follow-on contract to operate the plant from December 1, 2010 through November 30, 2015 (app. R4, supp. A-3, attach. 2).

In March 2013, appellant requested a $2,364,246 increase in the contract price, citing section 1.3.23 (R4, tab 36 at 1283-84). The government, also citing section 1.3.23, responded by unilaterally modifying the contract to add $909,920.13 to the contract price (R4, tab 31 at 1187, 1190), as the government now explains (by way of a proposed finding of fact), "to compensate [appellant] for concrete price costs increases exceeding 10 percent of the J-1 concrete prices that [appellant] cited" (gov't br. at 7 ¶ 21).

## DECISION

*ASBCA Nos. 60130 & 61611*

The government says that appellant cannot rely on the J-1 price list as its "estimated price" for purposes of section 1.3.23 (*see* gov't br. at 9).\* Section 1.3.23 provides that "[t]he successful Contractor will be allowed to request an equitable adjustment to the contract after award to adjust their price if the price for concrete, aggregate and concrete testing varies more than 10% as of 1 December 2010 from the estimated price." (R4, tab 56 at 4475) A concurrent interpretation by the parties of contract terms prior to a dispute is entitled to great, if not controlling, weight. *Ver-Val Enterprises, Inc.*, ASBCA No. 43766, 95-1 BCA ¶ 27,334 at 136,232. Prior to this dispute, the government at least implicitly agreed with appellant that J-1 prices could be used as the estimated price benchmark for purposes of section 1.3.23: appellant requested a contract price adjustment to take into account an increase above J-1 prices, and the government increased the contract price. The government now explains (by way of a proposed finding of fact) that the increase in the contract price was "to compensate [appellant] for concrete price costs increases exceeding 10 percent *of the J-1 concrete prices* that [appellant] cited" (gov't br. at 7 ¶ 21 (emphasis added)).

---

\* Appellant asserts as entitlement issues whether it may recover overhead and profit (app. br. at 8 ¶ 1(b)). We regard those as quantum issues. *See Missouri Department of Social Services*, ASBCA No. 61121, 19-1 BCA ¶ 37,240 at 181,278-79.

4

Although appellant's argument relies upon that government action, the government's argument fails to address its import (app. br. at 5-6 ¶ 18, 15-16; gov't br. at 8-21). Rather, the government relies heavily on the provision in Amendment 0013 to the solicitation that "Offeror's should do their best to realistically estimate what this cost may be after 1 December 2010" (gov't br. at 13-15), but, as appellant points out and the government appears only to acknowledge (reply at 3-4; gov't br. at 14 n.8), that provision is not in section 1.3.23 of the contract itself. Moreover, as appellant also points out but the government ignores (app. br. at 3; gov't br. at 8-21), when a bidder asked whether "a price listing titled Attachment J-1" still applied, the government said bidders "should use the J-1." Appellant did so, to estimate its prices. For all these reasons, appellant may base a request for a section 1.3.23 price increase upon an increase above the Attachment J-1 prices.

The only issue remaining in ASBCA Nos. 60130 and 61611 is whether, with prices having increased more than 10% above its estimated prices, appellant is entitled to the first 10% of that increase. The answer is yes. We interpret the contract as a whole, to give reasonable meaning to all its parts and avoid conflict or surplusage of its provisions. *Granite Construction Co. v. United States*, 962 F.2d 998, 1003 (Fed. Cir. 1992). Unlike section 1.3.4.1 of the contract, which expressly limits an adjustment to the contract price "to reflect the amount by which the rate actually paid varies by more than 15 percent from that specified," (R4, tab 56 at 4467) section 1.3.23 provides no such limitation. Consequently, appellant's recovery includes the first 10% of the increase above its estimated price. *See KiSKA Construction Corp.-USA & Kajima Engineering & Construction, Inc., J.V.*, ASBCA Nos. 54163, 54614, 09-1 BCA ¶ 34,089 at 168,564 (awarding entire amount of quantity increase pursuant to clause providing that equitable adjustment be based upon "any increase...in costs due solely to the variation above 115 percent...of the estimated quantity") (alteration in original) *aff'd*, 736 F. Supp. 2d 171, 192 (D.D.C. 2010), *aff'd*, 443 F. App'x 561 (D.C. Cir. 2011). Accordingly, appellant is entitled to additional compensation in ASBCA Nos. 60130 and 61611.

*ASBCA No. 60688*

Appellant says that the term "aggregate" in section 1.3.23 includes "masonry and stucco sand," and therefore that the contact required it to obtain masonry and stucco sand from the GTMO concrete batch plant, despite an unavailability of sand suitable for masonry and stucco at the plant that resulted in an increase in its costs (app. br. at 18-21; reply at 9). We need not decide whether the term "aggregate" in section 1.3.23 includes such "masonry and stucco sand." A contractor is not entitled to recover for a defect in a government contract where the contractor was or should have been aware of the defect before entering the contract. *See E.L. Hamm & Associates, Inc. v. England*, 379 F.3d 1334, 1339, 1341-42 (Fed. Cir. 2004). BRSC was both the GTMO concrete batch contractor and part of appellant's joint venture

when appellant entered the contract on June 3, 2010 (to begin work by June 13, 2010) (R4, tab 76 at 2966-75), and therefore was or should have been aware whether sand suitable for masonry and stucco was available at the GTMO concrete batch plant at that time, regardless of whether such sand would also be available after BRSC stopped operating that plant on November 30, 2010. Appellant does not say that between June 3 and November 30, 2010 (that is, between when appellant entered the contract and BRSC stopped operating the plant), sand suitable for masonry and stucco was available at the plant, such that the unavailability of suitable sand arose only after BRSC stopped operating the plant, introducing a contract defect that did not exist when appellant entered the contract. Consequently, if the contract requires the contractor to obtain masonry and stucco sand from the GTMO concrete batch plant, and if sand suitable for masonry and stucco was not available at that plant, that was a contract defect of which appellant was or should have been aware before entering the contract, and for which it may not recover. Accordingly, appellant is not entitled to additional compensation in ASBCA No. 60668.

## CONCLUSION

ASBCA Nos. 60130 & 61611 are sustained and returned to the parties for the negotiation of quantum. ASBCA No. 60668 is denied.

Dated: July 8, 2019

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60130, 60668, 61611, Appeals of BRDC, a Joint Venture, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals