LOURIE, Circuit Judge.
General Dynamics Corporation (“General Dynamics”) appeals from the decision of the Armed Services Board of Contract Appeals (“ASBCA”) denying its appeal from the contracting officer’s (“CO”) final determination of noncomplianee with Cost Accounting Standards (“CAS”) 412 based upon General Dynamics’ use of a partial-year asset valuation in computing its retirement plan forward pricing rates. Appeal of Gen. Dynamics Corp., ASBCA No. 56744, 11-2 BCA ¶ 34,787, 2011 WL 2624447, modified on recons., 11-2 BCA ¶ 34,875, 2011 WL 5528258. Because the ASBCA did not err in denying General Dynamics’ appeal, we affirm.
Background
General Dynamics entered into contracts with the Department of Defense, including, inter alia, fixed-price contracts, fixed-price incentive contracts, eost-plus-fixed-fee contracts, cost-plus-award-fee contracts, and time-and-materials contracts. Many of these contracts contain a clause requiring compliance with CAS. Such contracts were thus covered by the CAS, which, in general, “provide[s] uniformity in how contractors measure, assign, and allocate costs to Government contracts.” Gates v. Raytheon Co., 584 F.3d 1062, 1064 (Fed.Cir.2009). CAS 412, at issue in this appeal, “provide[s] guidance for determining and measuring the components of pension cost.” CAS 412-20(a).- It is primarily concerned with the way in *1377 which contractors account for their incurred pension costs, and hence how much of those costs may be charged to the government.
In estimating pension costs, the CAS calculation relies on a number of actuarial assumptions. CAS 412—30(a)(3) defines an “actuarial assumption” as “an estimate of future conditions affecting pension cost.” “Each actuarial assumption used to measure pension cost shall be separately identified and shall represent the contractor’s best estimates of anticipated experience under the plan, taking into account past experience and reasonable expectations.” CAS 412^0(b)(2). Those “[a]etuarial assumptions shall reflect long-term trends so as to avoid distortions caused by short-term fluctuations,” CAS 412—50(b)(4), and include “mortality rate, employee turnover, compensation levels, earning on pension plan assets, [and] changes in values of pension plan assets,” CAS 412-30(a)(3). For the periods relevant to this appeal, General Dynamics estimated, and the government agreed, that its pension fund would grow at 8% per year from January 1 of the years in question, viz., from 2004 through 2008.
At the beginning of each year, as of January 1, General Dynamics conducts a valuation of its pension fund, which allows it to determine what pension costs it is permitted to charge to the government under its contracts based on the actual value of its pension plan. That calculation compares the expected value from the pri- or year’s estimation (assuming 8% growth’ from the previous January 1) with the actual value on January 1.
General Dynamics also submits a second evaluation pursuant to the Federal Acquisition Regulations (“FAR”) to estimate the future value of-its pension fund to calculate what is known as the retirement plan forward pricing rate (“RPFPR”) for new contracts and contract modifications. See FAR 42.1701(b) (“The [CO] shall obtain the contractor’s forward pricing rate proposal and require that it include cost or pricing data that are accurate, complete, and current as of the date of submission .... ”). The RPFPR calculation involves a projection of pension plan asset values for the current base year as well as projections between three and nine years out. While it was disputed before the ASBCA, neither party disputes on appeal that the CAS 412 regulations apply to the FAR RPFPR projections.
Over the last 25 years, General Dynamics has variably used midyear asset values, instead of January 1 values, in setting its updated RPFPR proposal for a base year. General Dynamics combined the previously mentioned 8% per year pension growth rate estimate, prorated, with that midyear value to create a “blended” rate for the remainder of the base year, and then applied the long-term 8% rate for the remaining years in the three to nine year projection in the RPFPR. Viewed differently, General Dynamics combined two rates: the actual growth rate from January 1 to the midyear date and the 8% per year rate, pro-rated, from that midyear date until the end of the year.
The Defense Contract Management Agency notified General Dynamics in 2006 that its use of a blended rate using partial-year valuations did not comply with CAS 412. The CO issued a final notice of noncompliance with CAS 412 in 2007. Following the final notice, General Dynamics submitted a compliant retirement plan using the 8% rate from January 1, not the blended rate. However, in 2008, General Dynamics once again submitted a retirement plan using the blended rate for the base year. The CO issued a second final determination of noncompliance with CAS 412. *1378 General Dynamics appealed to the ASBCA.
The ASBCA denied General Dynamics’ appeal, determining that General Dynamics’ use of partial-year asset data reflected short-term fluctuations that could and did introduce distortion prohibited by CAS 412—50(b)(4). The ASBCA also determined that General Dynamics’ substitution of a midyear value and a blended rate in place of the 8% long-term estimate rate constituted “actuarial assumptions” because they were “estimate[s] of future conditions affecting pension cost” as defined in CAS 412-30(a)(3). Thus, according to the ASBCA, they are encompassed by the prohibitions of CAS 412—50(b)(4). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).
Discussion
In accordance with the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, this court reviews the ASBCA’s decisions on questions of law de novo. See 41 U.S.C. § 7107(b)(1); Ra-Nav Labs. v. Widnall, 137 F.3d 1344, 1346 (Fed.Cir.1998). We may set aside the ASBCA’s determination on a question of fact only if it is “fraudulent, arbitrary, or capricious; ... so grossly erroneous as to necessarily imply bad faith; or ... not supported by substantial evidence.” § 7107(b)(2). A determination is adequately supported if it is based on “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” E.L. Hamm & Assocs. v. England, 379 F.3d 1334, 1338 (Fed.Cir.2004).
General Dynamics argues that the ASBCA erred in holding that its use of a partial-year asset valuation and subsequent blended rate in its RPFPR violated CAS 412—50(b)(4). In support of its position, General Dynamics notes that it has been using that method for 25 years without government objection. General Dynamics contends that the use of a current, midyear value is a historical fact, not an “actuarial assumption” as it is not an estimate of future conditions, although they conceded in oral argument that “in this court ... we need to comply with CAS 412 and that we do so.” Oral Argument (Feb. 6, 2013) at 3:43-51, available at http:// www.cafc.uscourts.gov/oral-argument-recordings/all/general-dynamics.html. According to General Dynamics, the only assumption made is the uncontroverted 8% per annum growth, whereas the blended rate, calculated from the actual midyear value and the 8% estimate, is not an actuarial assumption because it is based on historical fact as well as the 8% growth rate. Because, in its view, the midyear value and the resulting blended rate are not actuarial assumptions under CAS 412-30(a)(3), General Dynamics argues that the use of both of them cannot violate CAS 412—50(b)(4), which only applies to actuarial assumptions. General Dynamics also points to other provisions that require accurate estimation that General Dynamics alleges raise conflicting obligations for contractors forced to use the government’s less accurate accounting method. Appellant’s Br. 46-50 (citing CAS 412—40(b)(2) (“best estimates ... taking into account past experience and reasonable expectations”); FAR 2.101 (defining forward pricing rate agreements as having rates representing “reasonable projections of specific costs”); FAR 42.1701(b) (stating that the CO shall require that the forward pricing rate proposal includes “accurate, complete, and current” cost or pricing data); 10 U.S.C. § 2306a(a)(2) (“TINA”) (requiring a contractor to submit cost or pricing data that is “accurate, complete, and current”)).
The government responds that General Dynamics’ use of both the midyear market value of its pension plan and the subse *1379 quent blended rate are both “actuarial assumptions” under CAS 412—30(a)(3). The government argues that these actuarial assumptions, because they rely on midyear values, inherently reflect short-term fluctuations and cause distortions in violation of CAS 412—50(b)(4). The government contends that the relative accuracy of General Dynamics’ method is irrelevant because the purpose of the CAS regulations is uniformity and consistency, not accuracy-
We agree with the government that General Dynamics’ use of midyear market values and the subsequent blended rate for the base year violate CAS 412-50(b)(4). First, both the midyear market value and the subsequent blended rate are actuarial assumptions. CAS 412—30(a)(3) defines an “actuarial assumption” as an “estimate of future conditions affecting pension cost.” As a matter of principle, we agree' with General Dynamics’ proposition that the actual value of the plan assets on a given day is a historical fact, not an actuarial assumption. That historical fact, however, must be distinguished from the two decisions concerning which data point to use and how that data point affects the established rate.
The parties do not dispute that the assumed 8% return from January 1 is an actuarial assumption regardless' of the actual value of the assets on January 1. In that circumstance, both the date chosen and the rate applied are actuarial assumptions. The decision to use a day other than January 1 combined with blending that value with a pro-rated 8% growth rate is likewise an actuarial assumption because it is effectively substituting a new rate and base date in place of the original 8% growth rate from January 1. Stated another way, the use of a given midyear, value assumes that the value from that midyear date is a viable predictor of long-term future pension costs just as the assumption that 8% growth from January 1 was agreed to be. The new blended rate from the midyear date is thus as much “an estimate of future conditions affecting pension cost” as the original 8% rate from January 1. Thus, both the choice of a specific midyear date and the resulting blended rate are actuarial assumptions governed by CAS 412-50(b)(4).
Second, we also agree with the government that General Dynamics’ use of the midyear value' and the resulting blended rate violates CAS 412—50(b)(4) because it does not “reflect long-term trends so as to avoid distortions caused by short-term fluctuations.” CAS 412—50(b)(4). As is self-evident, the use of a midyear value inherently reflects such short-term fluctuations in relation to January 1, because that value is based on the partial-year, short-term trend since January 1.
Contrary to General Dynamics’ assertion, the presumed accuracy of the midyear value in the base- year does not make the use of that value and the subsequent blended rate compliant with CAS. Indeed, the “accuracy” argument raised by General Dynamics ignores the fact that the forward pricing rate is not only for the base year, but for a projection from three to nine years into the future. Indeed, even if General Dynamics’ approach may be an accurate representation over the short term, that is only because it impermissibly reflects short-term fluctuations. General Dynamics’ method improperly locks in that short-term fluctuation causing a distortion that alters the level of growth throughout the rest of the projection.
As the government notes, the purpose of CAS is to “enhance uniformity and consistency.” CAS 412-20(a). No mention in the regulation is made of accuracy or even the short-term accuracy offered by General Dynamics’ approach. Allowing a *1380 contractor to use General Dynamics’ methodology, which is based on random or arbitrary sampling dates throughout the year, does not promote such uniformity and consistency. On the contrary, it promotes the opposite: manipulation by self-interested selection of the pricing date. While there is no evidence that General Dynamics self-selected a midyear date to take advantage of a short-term market change, the risk that any party using General Dynamics’ approach could do just that is quite apparent. It is entirely plausible that a company, after a sharp market turn in its favor, would choose to update its retirement plan forward pricing rates using a midyear value that benefited its interest when compared to the January 1 date or some other midyear date. That risk of manipulation is contrary to the goals of uniformity and consistency.
Moreover, uniformity and consistency are clearly missing in General Dynamics’ methodology as evidenced by a brief review of General Dynamics’ choice of dates. Over the last 25 years, General Dynamics has used valuation dates from January, June, July, August, and October, varying not only the month, but also the date within the month—using both mid-month and end-of-the-month values. The date of the asset valuation has also ranged from five days prior to the forward pricing rate submission to as much as 42 days prior. The practice espoused by General Dynamics is thus contrary to uniformity and consistency.
As for the other CAS, FAR, and TINA provisions cited by General Dynamics, we do not see a conflict. First, after reviewing the provisions, we see no inconsistent obligations, although we leave open the possibility of some unforeseen conflict in a future case. Second, to the extent CAS and FAR conflict as to the allocability of costs, the more specific CAS provisions control. See, e.g., United States v. Boeing Co., 802 F.2d 1390, 1395 (Fed.Cir.1986) (CAS regulations trump Defense Acquisition Regulations). General Dynamics’ concerns of conflicting obligations are thus premature and not persuasive.
We have considered General Dynamics’ remaining arguments and do not find them persuasive. We find no error in the ASBCA’s well-reasoned decision. Accordingly, we affirm,.
AFFIRMED
Opinion for the court filed by Circuit Judge LOURIE.
Dissenting opinion filed by Circuit Judge WALLACH.